John William BURKS Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. C14–84–743–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 13, 1985.

Rehearing Denied July 11, 1985.

Robert J. Sussman, Pizzitola, Hinton & Sussman, Houston, for appellant.

Hon. J. Harvey Hudson, Asst. Dist. Atty., Houston, for appellee.

Before JUNELL, ROBERTSON and CANNON, JJ.

OPINION

ROBERTSON, Justice.

Appellant entered a plea of not guilty to carrying a prohibited weapon; trial was to the court on stipulated evidence; punishment was assessed at three days' confinement and a $500 fine. Issues presented for our review concern: 1) waiver of the right to confront and cross-examine witnesses, 2) alleged judicial bias and 3) the sufficiency of evidence. We affirm.

Appellant's present counsel did not represent him at trial, and he now challenges unobjected to trial court proceedings. To properly understand appellant's conten-

tions and our approach to them, a rather detailed statement of what this very brief record reveals is necessary.

The date of the offense was August 17, 1984. When the case was called for arraignment on August 24, 1984, the docket sheet shows it was reset for October 18, 1984 "for trial." When the case was called for trial on that date, the defendant entered a plea of not guilty and, even though the witnesses were present (as becomes evident below), the prosecutor announced "the State of Texas and defense counsel has agreed to a stipulation," and the following stipulation was dictated to the court and recorded by the court reporter:

That the defendant was stopped and arrested in Harris County, Texas on August 17, 1984, and that upon a search of the defendant's motorcycle at the scene of the arrest, a weapon, a handgun, was found under the locked seat of a motorcycle. That the stop and the arrest was pursuant to a violation of the traffic laws and such violation was observed by the officer. That the defendant is a Reserve Harris County Sheriff's Deputy, that the defendant is John William Burks, Jr. That the defendant was riding the motorcycle in question. That the parties agree that the above shall constitute the evidence submitted to the Court in this cause.

The trial judge then stated: "That is not near enough to get you into court," and engaged in a lengthy colloquy with the prosecutor during which time he inquired about the type of weapon found and whether the accused was "called on special duty at the time the stop was made and the handgun was found." The judge admonished both the prosecutor and defense counsel: "You all had better go back there and get all the stipulated facts of what actually happened in this case if you want to do it on stipulated facts and get it all in the record." The record next shows there was an off-the-record discussion between the judge, the prosecutor, and the defense counsel, and the record does not, therefore, reveal what was discussed. However, immediately thereafter, the judge dictated the following:

THE COURT: Let me see the information. You have the style and number of the case already. That on or about August 17, 1984, the defendant, John William Burks, Jr., was arrested for intentionally and knowingly carrying on or about his person a handgun. It is further agreed and stipulated that if the arresting officer was called to the stand to testify that he would testify under oath that he stopped the defendant who was riding a motorcycle for the reasons of a traffic violation. After having stopped the defendant for the violation of a city ordinance, Pasadena, Texas, the arresting officer present here?

MR. KARAHAN: He is, your Honor. (prosecutor)

THE COURT: Come on up here. Did you arrest him for a traffic ticket in violation of the City Ordinance of Pasadena, Texas?

OFFICER: Yes, sir.

THE COURT: Upon said arrest, the officer made a search of the vehicle, and found in a compartment or some compartment of the motorcycle a forty-five Caliber Colt Automatic Weapon and that he then filed on said defendant for said offense of intentionally and knowingly carrying a handgun on or about his person.

Further, if Chief Deputy Sheriff Mangogna were called to the stand to testify that he would testify that the defendant, John William Burks, Jr., is registered or had from his office an auxiliary deputy card, but at the time and place in question, the defendant, John William Burks, Jr., was not called on a special assignment and was not working on a special assignment, called by either he or Sheriff Jack Heard or any other such member of the Sheriff's Department with authority to do so. Chief, would you step up here for a minute would you please?

There then followed a colloquy between the judge and deputy Mangogna concerning the policies of the sheriff's office's use of auxiliary or reserve deputy sheriffs, and the following occurred:

THE COURT: And further that if Chief Mangogna were called to the stand to testify would testify that the practice of the Sheriff's Department in all cases when issuing an auxiliary sheriff's card and badge, and etc., informs the applicant, auxiliary applicant, that this card does not give him the authority to carry on or about his person a handgun unless he was in a specific call to duty by the Sheriff's Department. Anything else that you all would like to add?

A discussion then ensued between appellant's trial counsel and Deputy Mangogna, during which appellant's counsel asked several questions, with the trial judge then joining in, concerning what a reserve deputy was required to do to be assigned to duty in order to be authorized to carry a handgun. The following then occurred:

THE COURT: Was he on special duty at that time?

CHIEF MANGOGNA: Judge, we have had reserve (sic) in the past who would come in and volunteer for additional duty other than what they were assigned.

THE COURT: Excuse me for interupting (sic), but I am asking for your opinion. Assuming for a second, let me give you a hypothetical, assuming for a second, if it was true that this man was on his way to the Rehab Center or any other place to work for the Sheriff's Department, would he be in the purvue of your call for special duty?

CHIEF MANGOGNA: That is correct, he would be. In compliance with our policy for a person in that position at that time we would consider him as being assigned to duty.

THE COURT: Now, do you know whether or not this man was doing that at the time?

CHIEF MANGOGNA: No, sir.

THE COURT: Is his Captain here or does anybody know. Do you have any proof that he was doing that?

MR. MAHONEY: Absolutely not.

(defense counsel)

THE COURT: There is no proof before the Court that this man, at the time of the arrest in question, was in route (sic) to any detention center or any other Sheriff's facility to go on to duty at the time of said arrest. Anything else?

MR. MAHONEY: I think that is all we have.

THE COURT: Is there anything else from the State?

MR. HALLING: Nothing from the State.

(the prosecutor)

Finally, addressing the defendant, the trial court asked:

THE COURT: Do you agree to the stipulation of facts that have been read into the record by the Court and agreed to by Mr. Mahoney?

MR. BURKS: Yes, your Honor.

And in concluding the proceedings, the following occurred.

THE COURT: Let the record reflect that the defendant himself in open Court agreed to the statement read into the record by the Court and agreed to by Mr. Mahoney and the State's attorney. Is there anything else that either side would like to put into the record?

MR. MAHONEY: We have nothing further your Honor.

MR. HALLING: The State has nothing further, your Honor.

THE COURT: Do either one of you want to say anything before the Court passes judgment.

MR. MAHONEY: We have nothing further, your Honor.

MR. HALLING: The State has nothing further.

■ In his first ground, appellant asserts "the trial court erred when it orally dictated stipulations into the record where there was no showing the appellant had knowingly and voluntarily waived his

right" to confront and cross-examine witnesses. While the ground is so worded, we believe appellant's complaint is that since the record is silent concerning waiver, we cannot presume an effective waiver of the constitutional right to confront and cross-examine witnesses. This contention was not raised through a motion for new trial and is presented for the first time on appeal for our review.

While the record does not contain an express waiver, either written or oral, of the right to confront and cross-examine witnesses, we find no error. We believe the proceedings as set forth above adequately show a waiver. Appellant was represented by counsel who actively participated in the stipulation and even questioned one of the two witnesses called before the bench to clarify the issue of whether the defendant was "on duty" at the time of the arrest. At the conclusion of the stipulated proceedings, the appellant personally agreed, as did his attorney, to the stipulated facts and further told the court *three* times that the defense had nothing further to offer. Faced with a somewhat similar factual situation in *Shepherd v. State*, 162 Tex.Cr.R. 235, 284 S.W.2d 155 (1955) the Court of Criminal Appeals said:

> If, in fact, the appellant did not join in the waiver, we think it became incumbent upon him to have made an issue on this point at the hearing on the motion for new trial.

We fail to understand why the rule announced there should not still control. *See also Satterwhite v. State*, 499 S.W.2d 314, 316 (Tex.Crim.App.1973); *Salas v. State*, 385 S.W.2d 859, 861 (Tex.Crim.App.1965). The court of criminal appeals has also held that confrontation clause rights can be waived by trial strategy. *McMahon v. State*, 582 S.W.2d 786 (Tex.Crim.App.1979). We agree, and believe the record before us supports this conclusion. Appellant's first ground is overruled.

■ In his second ground of error, appellant alleges the trial court exhibited bias and prejudice and deprived him of due process by instructing the state as to what stipulations were needed to support a conviction and questioning witnesses of his own accord. While it is essential that the judge never assume the position of a litigant in the trial of a case, we do not believe the record reveals that the conduct of the judge reaches the level of error that appellant asserts. This was a trial before the court and therefore, we must look at the complained of error in light of the general presumption that the trial court does not commit trial error in such proceedings. In addition, appellant made no objection at the time to the participation of the trial judge.

It is well-established that a trial court can ask questions to clarify an issue or to obtain a clearer idea of the merits of the case. *Marshall v. State*, 164 Tex.Cr.R. 167, 297 S.W.2d 135, 136 (1956). While we do not necessarily agree with the trial court's conclusion that the initial stipulation was deficient in the two areas he wanted clarified, that is not the issue. The fact is that there was a question or questions in his mind that he wanted clarified. We fail to understand how the trial court's action in questioning the two officers could have harmed appellant. In fact, had the additional questioning established an illegal search or a right to carry the weapon, it would have only benefitted appellant. Appellant's second ground is overruled.

In his third ground appellant contends "... the evidence is insufficient to support appellant's conviction in that the original stipulation was not approved by the court and no other evidence was introduced by the state." What we have said above adequately, we believe, answers this contention. Appellant's third ground is overruled.

■ In his fourth ground, appellant contends there was no evidence to support a finding that the weapon was "on or about" appellant's person. The original stipulation stated the handgun was found in a locked compartment under the seat of appellant's motorcycle. The stipulation dictated by the judge stated the gun was "found in a compartment or some compartment of the mo-

torcycle." We do not believe that whether the first, the second or both stipulations are accepted is dispositive.

Appellant concedes in his brief that "on or about" one's person means "nearby, close at hand" or within such distance that the party can reach it without materially changing his position. *Wagner v. State*, 80 Tex.Crim. 66, 188 S.W.2d 1001, 1002 (1916). We believe, as a matter of common knowledge, that any compartment on a motorcycle fits within that definition. Indeed, it would appear that it could well be much closer in proximity than some parts of the interior of a car which has been previously held to be "on or about" a person. *Christian v. State*, 686 S.W.2d 930, 933 (Tex. Crim.App.1985) citing *Courtney v. State*, 424 S.W.2d 440 (Tex.Crim.App.1968). Whether we accept, as appellant insists, as fact the handgun was found in the locked compartment under the seat of the driver or that it was found in "some compartment on the motorcycle" is merely a distinction without a difference. What is important is that the compartment was in close proximity and within appellant's reach. Appellant's fourth ground is overruled.

The judgment is affirmed.