Johnny Dwayne STATEN, Appellant,

v.

The STATE of Texas, State.

No. 2–94–405–CR.

Court of Appeals of Texas,
Fort Worth.

April 4, 1996.

David A. Pearson, IV, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Betty Marshall and Charles M. Mallin, Assistant Chiefs of the Appellate Section, M. Susan Goggan, Bill Durkin, and John Cope, Assistant Criminal District Attorneys, Fort Worth, for appellee.

Before DAY, DAUPHINOT and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

Appellant Johnny Dwayne Staten was convicted by a jury of delivery of marijuana in an amount greater than four ounces but less than five pounds. In seven points of error, Staten contends the trial court erred in: (1) abandoning its neutral role and advising him not to call witnesses; (2) overruling his challenge to prospective juror number 14; (3) denying him consultation with his own expert witness; (4 & 5) allowing improper jury argument; (6) failing to properly admonish him about his waiver of counsel; and (7) denying him a speedy trial. We affirm.

In his first point of error, Staten contends that his right to a fair trial was infringed when the trial judge abandoned his neutral role and advised him that it would not be in his best interests to call witnesses. Staten argues that the trial court "infringed upon Mr. Staten's ability to present his case by expressing his personal opinions on whether Mr. Staten should call certain witnesses." Staten bases this contention on the following exchanges:

THE COURT: Well, I cannot, at this point in time, make any—any promises about what I might or might not do.

As far as witnesses are concerned, we've got them calling in seeing whether or not they're going to have [to] come in. And I think we better just start calling them in.

Now, I can tell you this, Mr. Staten, that I have no idea what [Staten's standby counsel] has told you, but if I were in his position, I probably would have told you the same thing he did. That these witnesses are all going to be just as unfriendly as can be to you because you've subpoenaed them off their job. From what I

hear from the bailiffs, most of them don't feel like they have any—anything to say about any of this. But we'll proceed.

MR. STATEN: I'll rest. I'll rest.

As the State points out, these comments are similar to advice given by Staten's stand-by counsel:

> [STANDBY COUNSEL:] I still think—my best advise [sic] to Mr. Staten is not to present any of these witnesses. Because in my opinion, my best legal opinion, they could not help him. And, in fact, they could be a detriment because they could open a door in the guilt/innocence phase to extraneous offenses that I believe the Court would allow.

Staten contends that the trial court "intervened into the decisions of the defense" or "infringed upon the conduct of the defense" by becoming an "advocate" or "assum[ing] the position of a litigant" as in *Bethany v. State*, 814 S.W.2d 455, 462 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) or *Burks v. State*, 693 S.W.2d 747, 750 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). We disagree. We find that the trial court's comments were far less intrusive and prejudicial than those of the court in *Bethany*, where error was found, and not even as intrusive and prejudicial as those of the court in *Burks*, where no error was found. We hold that under the facts of this case, the trial court's comments (all of which were made out of the presence of the jury) did little more than show agreement with Staten's standby counsel and did not prejudice Staten's defense. Point of error one is overruled.

■ In Staten's second point of error, he contends that the trial court abused its discretion by overruling his challenge to prospective juror number 14 who, Staten argues, was biased in favor of police officers. He argues that veniremember 14's answers demonstrated objectionable bias. Some of the pertinent passages are:

> MR. STATEN: I see your father was a police officer. . . . Would you tend to believe an officer's testimony over a defendant's testimony because your father is a police officer?

> [VENIREMEMBER 14]: If either party is under oath, I would believe if you're under oath that you're telling the truth.

> MR. STATEN: What if they're both under oath and one of them is not telling the truth, obviously, by the evidence.

> [VENIREMEMBER 14:] I would probably believe the police officer.

>  . . . .

> THE COURT: [Veniremember 14], I think I understood you correctly but I need to ask you. You'd indicated, I think, that in answer to one of your questions that you might believe a police officer over an ordinary person, is that correct?

> [VENIREMEMBER 14]: Under oath, that's correct.

> THE COURT: If they're under oath. In other words, if the police officer is under oath he's going to tell the truth, is that right?

> [Veniremember 14]: Not—not all the time. But most of the police officers that I have met and that I know are truthful individuals. And so, my inclination would be to believe the police officer.

> THE COURT: Let me ask you this. Now, if you were seated on the jury and a police officer testified and the defendant testified and the stories were opposed to each other and you had this instruction, I want to know whether or not you would be able to follow it.

> In considering the weight and value of the testimony of any witness you may take into consideration the appearance, the attitude, the behavior of the witness, the interest of the witness in the outcome of the case, the relation of the witness to the State or the defendant, the inclination of a witness to speak truthfully or not. The probability or improbability of a witness' statement and all other facts and circumstances in evidence.

> Now, would you be able to apply that as strongly to the police officer as you would to the defendant?

> [VENIREMEMBER 14]: Absolutely. I would apply that in equal in both amounts.

>  . . . .

[STANDBY COUNSEL:] But in your own mind if all you had to go on was the word of the police officer and it directly countered a defendant that testified, your relationship with police officers is such that you have a tendency, do you not, just by who they are and what they represent and what they do for a living, that they're more likely to straight shoot with you, is that correct?

[VENIREMEMBER 14]: Well, under oath if there are two different accounts and a police officer is giving one account and an accused person is giving another account, one of them, in my opinion, is not telling the truth. And in my relationship with police officers and the ones that I know, that is [a] correct statement. I would have an inclination to rely upon their testimony more.

[STANDBY COUNSEL]: And so, that means that if you have an inclination that means that just speaking in the abstract when that police officer gets on the stand in that situation, he's got an edge in credibility, doesn't he? I mean, doesn't he have an edge over a plain civilian or defendant testifying?

[VENIREMEMBER 14]: Not necessarily.

[STANDBY COUNSEL]: Because he—

[VENIREMEMBER 14]: Not necessarily. I would—I would probably have difficulty convicting someone if the only evidence was a police officer's testimony.

[STANDBY COUNSEL:] But if this [is] all you had to go on and you had this relationship with [a] police officer, and it is true that you have to give them more credence because they're the police officer and—and the guy that's been arrested is the defendant, is that right.

[VENIREMEMBER 14]: That's correct.

[STANDBY COUNSEL]: I pass the witness.

[STATE]: Why would you have difficulty convicting somebody if the only testimony were that of a police officer?

[VENIREMEMBER 14]: Because there are some police officers who—who

aren't truthful in some of their statements. And I—I don't know if this would be allowable in a court situation, it would help if I knew the background of the police officer as well.

■ The decision of a trial court regarding a challenge for cause will not be disturbed absent an abuse of discretion. *Williams v. State,* 773 S.W.2d 525, 536–37 (Tex.Crim.App. 1988), *cert. denied,* 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 207 (1989). In this case, veniremember 14's inclination towards police officers was equivocal. Moreover, the trial court was in a position to observe this inclination and to gauge his response that any such inclination would be controlled by his ability to follow the instructions of the court. We hold that the trial court did not abuse its discretion in refusing to strike veniremember 14 for cause. Point of error two is overruled.

■ In Staten's third point of error, he contends he was denied due process and a fair hearing because he was not allowed to consult with his own expert witness. Staten requested and was appointed an independent expert to perform a quantitative weight analysis of the marijuana in this case. He claims that he was deprived of the actual "assistance" of the expert, hence the "appointment was a hollow gesture." He offers the following testimony as proof that he was deprived of this "assistance":

[MR. STATEN:] Did I ever talk with you about the analyzation?

[EXPERT:] No sir, we did not.

. . . .

[MR. STATEN:] And when you came back, I wasn't able to talk with you, is that correct, sir?

[EXPERT]: We did not speak. We did not talk when I came back.

However, a further examination of the record reveals another exchange:

[MR. STATEN:] Okay. Let me get this straight because I want to know. [Staten's standby counsel] called you to ask you about coming to court, is that correct? Or coming here for the analyzation, is that correct?

[EXPERT:] That was—that was my understanding from—from my boss, that we

were—that we were called. Because we were discussing who—who was—who was the one that called. And I believe that—that Mrs. Armstrong said it was the counsel for the Defense.

[MR. STATEN:] Okay. And originally—

[EXPERT:] I myself did not talk to—to—

[MR. STATEN:] In the courtroom here, I was not able *finish talking* [sic] with you, correct?

[EXPERT:] At what point, sir?

[MR. STATEN:] At the point when you came to pick up the contraband?

[EXPERT:] Again I don't recall. I know that we—*we talked about some things then and then you left the room.* I don't recall whether we were—whether you had completed asking me questions or not. [Emphasis added.]

And the State's complete redirect:

[STATE:] [Expert], if the defendant would have wanted to talk to you, would you have talked to him?

[EXPERT:] Yes, sir.

[STATE:] Pass the witness.

We find that the record shows that Staten did talk with the expert. We also find that if he did not consult with the expert as fully as he wished to, then he points this court to nothing in the record to suggest that either he or his standby counsel were in any way deterred from doing so. We overrule point of error three.

In Staten's fourth point of error, he contends that the trial court erred in overruling his objection to improper jury argument. During the State's argument of the punishment phase, the following occurred:

[STATE:] Well, what's the point is that the defendant sold Officer Timpf or delivered it to him and was going to get 1800 bucks for it. And he didn't know and didn't care where it was going to go after it got—after it left Officer Timpf. Think about the impact of that. He didn't know—

[STANDBY COUNSEL]: Objection, Your Honor, that's outside the evidence.

[STATE]: I submit it's within the evidence, Your Honor.

THE COURT: I'll overrule the objection.

[STATE]: By the evidence, there is no way to know where that would have gone and this defendant delivered it to him anyway. Who knows? If Officer Timpf had been somebody really buying that dope, who knows where it would have gone, whether that would be an adult or a kid, or pregnant mother, whatever, nobody knows. But the point is this defendant made the delivery anyway. And that's bad. That is bad.

Staten complains that this argument constituted error because "inviting the jury to speculate regarding the number of individuals an accused has affected by his illegal drug activities is improper." *Morris v. State,* 755 S.W.2d 505, 509 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd) (citing *Thomas v. State,* 527 S.W.2d 567, 567 (Tex.Crim.App. 1975)). We note first that there are two arguments presented here.

■ The first argument precedes the objection. If there had been error in that argument it would have been preserved by the objection. The crux of the argument was that Staten didn't know and didn't care where the drugs were going after he sold them to Officer Timpf. Similar arguments have been held to be "common knowledge" or a "reasonable deduction," and thus a proper plea for law enforcement. *Garza v. State,* 622 S.W.2d 85, 93 (Tex.Crim.App. [Panel Op.] 1980); *Lindley v. State,* 736 S.W.2d 267, 276 (Tex.App.—Fort Worth 1987, pet. ref'd untimely filed). There was no error in allowing this argument.

■ Staten also argues that we should consider the portion of the State's argument that followed the objection, even though no objection was lodged concerning this argument. The argument which follows the objection would have been problematical if Staten had objected to it. *Monkhouse v. State,* 861 S.W.2d 473, 477–78 (Tex.App.—Texarkana 1993, no pet.) (argument that amphetamines "[c]ould have gone to pregnant mothers and school kids" invited speculation);

*Morris* 755 S.W.2d at 509 (error to argue sales to children absent evidence); *Thomas,* 527 S.W.2d at 567–68 (error to argue appellant was responsible for affecting other lives based on evidence of a single sale). But "[i]t is generally presumed that a failure to object to impermissible jury argument waives any error." *Willis v. State,* 785 S.W.2d 378, 385 (Tex.Crim.App.1989), *cert. denied,* 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 234 (1990).

■ An exception to this waiver rule can occur when jury arguments are so egregious that no instruction can cure the harm they create. *Id.* However, Staten presents no authority to imply that this argument rose to that level of prejudice. While the Texarkana court implicitly found error in the State's speculation about kids and pregnant mothers, it specifically declined to find that the argument standing alone constituted harmful error. *Monkhouse,* 861 S.W.2d at 478. We explicitly find that inviting such speculation was error. However, we also find that this argument was not so egregious that it could not have been cured by an objection and instruction by the trial court. *See Garza,* 622 S.W.2d at 93 (comment that heroin "will turn young girls into prostitutes" was cured by instruction). Consequently, we find that Staten has failed to preserve error as to the latter argument. Point of error four is overruled.

■ In Staten's fifth point of error, he contends that the trial court erred in failing to grant a mistrial due to the following argument by the State:

[STATE:] And another thing I would like you to consider is where you want this defendant to be. Do you want him away from us to where we don't have to worry about him, what he's doing? Or do you want to run into him at Krogers, for example, okay. I mean, if you put him on probation, folks, he's not going to be in prison. Where is he going to be? He's going to be around here. And, you know, who knows what's going to happen, but you better be prepared for it, folks, for being in the check-out line at Kroger—

[STANDBY COUNSEL]: Objection, Your Honor.

THE COURT: I'll sustain—I'll sustain the objection. Ladies and gentlemen of the jury, don't consider that last statement as any part of the evidence or argument.

[STANDBY COUNSEL]: Your Honor, I would ask the jury be instructed to disregard and move for mistrial.

THE COURT: I'll overrule that.

Staten contends that the argument asked the jury to convict him "for being a criminal generally," or "for a future extraneous offense."

We do not find the *Lomas* case cited by Staten to be dispositive under the facts in this case. *Lomas v. State,* 707 S.W.2d 566, 568 (Tex.Crim.App.1986). However, even if we were to agree that the argument was error, the issue before this court is whether the court abused its discretion in failing to grant a mistrial. The trial court sustained Staten's objection and instructed the jury not to consider the argument as evidence or argument. We find that nothing in the facts of this case that removes it from the general rule that an instruction to disregard is sufficient unless there is an impossibility of withdrawing the impression produced on the minds of the jury. *Waldo v. State,* 746 S.W.2d 750, 754 (Tex.Crim.App.1988). Point of error five is overruled.

■ In his sixth point of error, Staten contends that the trial court did not properly admonish him, and thus he did not knowingly and intelligently waive his constitutional right to counsel. Staten made his decision to represent himself early in the proceedings, and this decision was addressed by the trial court three times.

■ A defendant may voluntarily and intelligently waive the right to counsel, in writing, following written admonishments by the trial court. TEX.CODE CRIM.PROC.ANN. art. 1.051(f) & (g) (Vernon Supp.1996); *see also Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530, 538 (1972) (acknowledges knowing and intelligent waiver of counsel). However, when the defendant affirmatively asserts his right to proceed without counsel, the admonishments by the court need not be in writing. *Burgess v. State,* 816 S.W.2d 424, 429–30 (Tex.Crim.App.

1991) (written waiver not required under article 1.051(g)). When a defendant asserts his right to waive counsel, the trial court must determine that the defendant understands the charges against him and is fully aware that he will have no assistance in a complex undertaking where professional training and experience are greatly desired. *Trevino v. State*, 555 S.W.2d 750, 751 (Tex.Crim.App. 1977).

Staten argues that the trial court did not "thoroughly investigate" his waiver as dictated by *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex.Crim.App.1984).[1] The trial court inquired as to Staten's: (1) experience in legal matters and representation in court; (2) lack of legal education; (3) reading of the law; (4) familiarity with the appropriate statutes, evidentiary rules and rules of procedure; (5) reasons for wanting to represent himself; and (6) educational background.

Moreover, at one hearing the trial court specifically admonished him that he: (1) could not represent himself and still have an attorney, (2) would be doing himself a disservice, (3) had inadequate knowledge to proceed, and (4) was seriously affecting the determination of what should be done in his cases. In a second hearing, upon Staten's insistence that he would represent himself, the trial court proceeded to admonish him that: (1) he might forego any error in the indictment, (2) his unfamiliarity with the rules of evidence could allow the admission of inadmissible evidence, (3) he could be convicted on incompetent evidence, (4) he could be convicted even if not guilty because he might not raise proper defenses, (5) he might give up selection of an impartial jury and errorless instructions for the jury, and (6) he was waiving his right to claim ineffective assistance of counsel. Finally, the trial court admonished him as to the full range of punishment for both a second and third degree felony.

We note that on this second occasion, some of Staten's replies to the trial court's questions and admonishments indicated that he did not wish to participate in the proceedings.[2] Yet he never contends that he did not understand the questions and admonishments put to him, nor does he contend that he was not competent to stand trial (even though he gave notice to the State of his intent to raise that issue). Moreover, a psychologist, Dr. WM Barry Norman, Ph.D., examined Staten and found that he "adequately understands his current legal situation, the charges against him and the legal issues and procedures in this case. He comprehends the possible dispositions, pleas and penalties," and that he was able to consult with officers of the court, and "comprehend instructions and advice of the presiding judge and able to make rational decisions after that advice." Dr. Tara Reddy, M.D., a psychiatrist, made similar findings in an evaluation that followed the hearing in which Staten was admonished.

Thus the record indicates that the trial court both admonished Staten and made an assessment of his demand that he represent himself. Through Staten's answers when he was co-operative, as well as the two mental evaluations that preceded and followed the hearing where he chose not to participate, the trial court was able to properly determine that Staten knowingly exercised his right to self representation. We decline to hold that Staten was not properly admonished because of his sporadic refusal to participate in the proceedings. *Cf. Parish v. State*, 632 S.W.2d 200, 202 (Tex.App.—Fort Worth 1982, no pet.), *overruled on other grounds by Weathers v. State*, 695 S.W.2d 367, 369 (Tex.App.—Fort Worth 1985, pet. ref'd) (A defendant may not manipulate the right of self-representation so as to obstruct orderly procedure of the court or interfere

---

1. Staten's appellate counsel also urges that "[t]he trial court failed to admonish Mr. Staten in compliance with the *Faretta* standard, as adopted by Texas." We address only those *Blankenship* inquiries which extend beyond *Faretta*, since Staten himself asserts that "Substitute Judge gave defendant warnings as set forth in *Faretta v. California*, 422 U.S. 806, 45 L.Ed.2d 562, 95

S.Ct. 2525," in his "Separate Brief Supporting Petition for Writ of Mandamus Cause Nos. 0401225/0380951."

2. He once indicated that he was "not going to be a part of it," and repeatedly answered "I want to go back to jail, sir."

with the fair administration of justice). Point of error six is overruled.

In Staten's seventh point of error, he contends that his constitutional right to a speedy trial was denied. Staten argues that he was denied a speedy trial because he was indicted on November 14, 1989, but his trial did not begin until August 15, 1994. The trial court has the authority to dismiss a case for violation of the right to a speedy trial. *State v. Johnson,* 821 S.W.2d 609, 612 n. 2 (Tex.Crim.App.1991). It makes this determination by applying a balancing test first enunciated in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972). The court considers four factors in its determination: (1) length of the delay, (2) reason for the delay, (3) assertion of the right to a speedy trial, and (4) prejudice to the defendant resulting from the delay. *Id.; Deeb v. State,* 815 S.W.2d 692, 704 (Tex.Crim. App.1991), *cert. denied,* 505 U.S. 1223, 112 S.Ct. 3038, 120 L.Ed.2d 907 (1992).

The first factor, length of delay, is to some extent a triggering mechanism that determines if further review is warranted. *Barker,* 407 U.S. at 530–31, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. The calculation of delay begins only when a formal indictment, information, or actual arrest occurs. *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 478 (1971).[3] In this case, the delay of more than four and a half years triggers our examination of the other three *Barker* factors.

The second factor is the reason for delay. In *Barker,* the Supreme Court listed three different categories for delay that courts must weigh when making a speedy trial determination: a deliberate attempt by the State to hamper the defense, negligence by the State or overcrowding of the courts, and a valid reason for delay. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Staten's trial was delayed twice upon his own motions for continuance. Additional reasons for the delay that will not be held against the State are: withdrawal of Staten's retained counsel for Staten's failure to follow instruc-

tions of the Court or his own counsel; and appropriate time for the court to respond to the scores of motions and writs filed by Staten.

The magnitude of Staten's filings prevents us from reviewing every reason which justified the delay of his trial. However we do note that a conscientious review of the evaluations of his competency, as well as the six writs or amended writs of habeas corpus, the writ of mandamus, and the motion for recusal of the trial court judge filed by Staten, could in and of itself provide sufficient reason for the delay. We find that Staten's own actions constituted the majority of the reason for the delay in this trial and that this factor weighs against his argument.

The third factor is the assertion of his right to speedy trial. Staten first asserted his right to a speedy trial by motion on December 1, 1993. He subsequently filed three additional motions asserting the right, the final motion on August 1, 1994, two weeks before the trial began. We find that this factor weighs in favor of Staten, in that he has aggressively asserted his right.

The fourth *Barker* factor is prejudice to the defendant. Since we attribute the majority of the reason for delay to Staten's own motions in preparation for trial, we cannot find that Staten was prejudiced in regards to his preparation for his defense. *See Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). In weighing all four of the *Barker* factors, we find that his overwhelming influence on the reason for delay overcomes any prejudice he might have suffered. We overrule his seventh point of error.

The judgment of the trial court is affirmed.

---

3. The *Marion* court noted that limitations statutes protect defendants from a lack of pre-arrest diligence on the part of the State. *Marion,* 404 U.S. at 322, 92 S.Ct. at 464, 30 L.Ed.2d at 479.