Affirmed and Opinion filed September 13, 2005









Affirmed and Opinion filed September 13, 2005.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00221-CR

 

______________________

 

NAIM ID-DEEN
GARNER,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 405th
Judicial District

Galveston County, Texas

Trial Court Cause No. 03CR0225

 



 

O P I N I O N








Appellant, Naim Id-Deen Garner, appeals
from his conviction for the felony offense of aggravated assault.  See Tex.
Pen. Code Ann. ' 22.02 (Vernon 2003).  Charged by indictment, appellant pled Anot guilty@ and entered pleas
of Anot true@ to two felony
enhancement paragraphs.  After
considering the evidence, the jury found appellant guilty.  Thereafter, the trial court found the
enhancement paragraphs to be true and assessed appellant=s punishment at
confinement in the penitentiary for a term of 50 years.  In two points of error, appellant complains
(1) the State violated his due process rights by failing to disclose favorable evidence
as required by Brady v. Maryland, 373 U.S. 83 (1963) and (2) the State
committed prosecutorial misconduct by leaving a false impression with the
jury.  We affirm.

The record reflects that at approximately
1:45 a.m., on January 28, 2003, Evett Mondier returned home from her job as a
topless dancer at an adult night club in Houston.  When Mondier arrived at her apartment
complex, she noticed appellant was watching her and walking towards her
vehicle.[1]  Frightened, she used a cell phone to call her
boyfriend, Jerome Keith Norris, who was inside their apartment.  Norris came out and began walking towards
Mondier=s car.  After a brief verbal exchange, appellant
left.  

About an hour later, at approximately 2:45
a.m., appellant returned and knocked on Mondier=s apartment
door.  Observing what appeared to be a
gun in appellant=s hand, Norris ordered Mondier to get her
loaded .380 Bersa pistol.  When Norris
opened the door, appellant immediately shot him in the chest.  Norris attempted to close the door but, after
a lengthy struggle, appellant forced the door completely open.  Norris then returned fire, hitting appellant
in the chest.  Appellant fired two more
shotsCstriking Norris in
the arm and shoulderCand then fled the scene in a white Ford
Taurus.

Mondier immediately called 9-1-1 for
help.  Shortly thereafter, emergency
medical personnel arrived and took Norris to the U.T.M.B. trauma center.  Houston Crime Scene detectives also arrived
on the scene to investigate the incident. 
They collected evidence including the Bersa .380 handgun used by Norris
and shell casings from rounds fired by both men.  In addition, they discovered a loaded shotgun
and cocaine inside Mondier=s apartment.








Subsequently, League City police officers
observed two men in a white Ford Taurus near F.M. 518 and I-45.  After the two men stopped in a nearby parking
lot, Officers Leland and Addock approached the vehicle.  Leland gained control of the driver but
appellant exited the vehicle and took off on foot.  Addock gave chase and quickly apprehended
appellant after he collapsed, presumably from the gunshot wound to his
chest.  Inside the suspects= vehicle, officers
recovered a Lorcin .380 handgunClater determined
to have been used in the shoot-out with NorrisCand a baseball batCallegedly intended
to be used on Mondier.  Appellant was
then arrested and transported by ambulance.

Disclosure of Brady Material

In his first point of error, appellant
contends the State violated his due process rights by failing to disclose
evidence favorable to his defense. 
Specifically, appellant argues the State refused to disclose the criminal
history records of the State=s key witnesses,
Mondier and Norris.  Both were convicted
of felony offenses arising out the same incident in which appellant was
charged.[2]  Appellant further alleges the State entered
into some sort of agreement with the two witnesses in which they would receive
favorable sentences in return for testifying against him.  Thus, appellant contends that by refusing to
disclose the witnesses= criminal records and the details of the
alleged agreements, the State improperly withheld impeachment evidence that was
crucial to his defense.

The State counters by arguing appellant
had full access to the criminal records because: (1) the records were a matter
of public record that could have been obtained through diligent efforts; (2)
the State maintained an open file policy with appellant=s trial counsel;
and (3) the State printed copies of the records for appellant, but counsel
failed to pick them up.  Furthermore, the
State points out there is nothing in the record to support appellant=s contention that
the witnesses received special treatment from the State in exchange for their
testimony. 








The Due Process Clause of the Fourteenth
Amendment requires the State to disclose evidence that is favorable to a
criminal defendant.[3]  Brady, 373 U.S. at 84B88; Thomas v.
State, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992).  When the State fails to disclose this type of
evidence, and the evidence is material either to guilt or to punishment, the
State violates the defendant=s due process
rights irrespective of whether the State was acting in good faith or bad faith.  Brady, 373 U.S. at 84B88; Thomas,
841 S.W.2d at 404.  This rule requires
disclosure of both exculpatory evidence and impeachment evidence.  Wyatt v. State, 23 S.W.3d 18, 27 (Tex.
Crim. App. 2000); Thomas, 841 S.W.2d at 404; Drew v. State, 76
S.W.3d 436, 447 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d).

In order to establish a due process
violation under Brady, a defendant must show: (1) evidence was
suppressed; (2) the suppressed evidence was favorable to the defense; and (3)
the evidence was material to either guilt or punishment.  Thomas, 841 S.W.2d at 404;  Drew, 76 S.W.3d at 447.  If all three factors are met, we must reverse
the conviction.  See McFarland v.
State, 928 S.W.2d 482, 511 (Tex. Crim. App. 1996); Butler v. State,
736 S.W.2d 668, 670 (Tex. Crim. App. 1987).

Suppression

The first element of Brady is
present if the prosecution actively suppresses evidence or negligently fails to
disclose it.  Butler, 736 S.W.2d
at 670; Baker v. State, 887 S.W.2d 227, 228 (Tex. App.C Texarkana 1994,
no pet.).  While the State has an
affirmative duty to disclose, it is Anot  required to facilitate the compilation of
exculpatory material that could have been compiled by the defense.@  Taylor v. State, 93 S.W.3d 487, 499
(Tex. App.CTexarkana 2002, pet. ref=d).  Thus, without suppression, there is no Brady
violation.  Id.; see also
Staten v. State, 919 S.W.2d 493, 498 (Tex. App.CFort Worth 1996,
pet. ref=d) (explaining that
no Brady violation exists unless it is shown that the defendant was
actually denied access to the allegedly favorable material).

Here, appellant=s counsel conceded
that the State Amaintained an open file policy with [him]@ throughout the
proceedings below.  Generally, if the
State opens its files for examination by defense counsel, it fulfills its duty
to disclose Brady evidence.  Brewer v. State, 126 S.W.3d 295, 305 (Tex.
App.CBeaumont 2004,
pet. ref=d).








Moreover, there is no evidence the State
suppressed the alleged Brady material at issue.  Regarding the criminal records, it is
important to note that they were a matter of public record.  While there is no Apublic records@ exception to the Brady
rule, if evidence is part of the public records and defense counsel should
know of the evidence but fails to obtain the records because of a lack of
diligence in his own investigation, there is no Brady violation.  Dalbosco v. State, 978 S.W.2d 236, 238
(Tex. App.CTexarkana 1998, pet. ref=d) (citing United
States v. Payne, 63 F.3d 1200 (2d Cir. 1995) and United States v. White,
970 F.2d 328 (7th Cir. 1992)); see also Keeter v. State, 105 S.W.3d 137,
147B48 (Tex. App.CWaco 2003), rev=d on other grounds, No. PD-1012-03,
2005 WL 766974, at *1B4 (Tex. Crim. App. Apr. 6, 2005) (A[U]nder a variety
of circumstances, courts have held that the duty fell to the defendant to
discover the complained-of [Brady] evidence.@).  Indeed, counsel admitted to the trial court
that he was aware of the existence of the records but explained he had been
unable to locate them.[4]  We do not construe counsel=s failure or lack
of diligence as any evidence that the State withheld evidence.  See Taylor, 93 S.W.3d at 499;
Staten, 919 S.W.2d at 498.

There is no showing in this case to
indicate the State intentionally, or even negligently, withheld the criminal
records of Mondier and Norris.  To the
contrary, the record indicates the State made affirmative efforts to provide
counsel with the requested evidence.  On
Friday, December 5, 2003Cthree days before trialCappellant=s counsel
requested copies of the criminal records from the District Attorney=s office.  Over the weekend, prosecutors made copies and
instructed counsel to pick them up before trial was to begin on Monday,
December 8.  However, counsel apparently
failed to pick up the requested copies.

Favorability








Assuming arguendo that the State
did unlawfully suppress the evidence in this case, appellant still must prove
the remaining two elements under Brady. 
The second part of Brady has been satisfied because the evidence
appellant complains of is favorable to his case.  See generally Thomas, 841 S.W.2d at 404
(holding that favorable evidence includes both exculpatory and impeachment
evidence); Taylor, 93 S.W.3d at 499 (same).  Impeachment evidence is that which is offered
Ato dispute,
disparage, deny, or contradict . . . .@  Thomas, 841 S.W.2d at 404 (quoting Black=s Law Dictionary 566 (5th ed. 1990)). 
The evidence in this case involves impeachment of the State=s two key
witnessesCMondier and NorrisCand whether or not
they were biased as the result of alleged agreements entered into with the
State.  Accordingly, the evidence is Afavorable@ to appellant.

Materiality

 Turning to the third element, we are
required to determine whether the evidence was material, i.e., it
created a probability sufficient to undermine confidence in the outcome of the
proceeding.  See Thomas, 841
S.W.2d at 404.  AEvidence is
material under the third Brady factor when there is a >reasonable
probability= that the outcome of the trial would have
been different if the suppressed evidence had been disclosed to the defendant.@  Runyan, 290 F.3d at 245.  To make this determination, we must examine
the alleged error in the context of the entire record and considering the
overall strength of the State=s case.  Thomas, 841 S.W.2d at 404B05.  A verdict that is only weakly supported by
the record is more likely to be affected by any Brady error than a
verdict that is strongly supported.  Strickland
v. Washington, 466 U.S. 668, 696 (1984).








Here, the State presented ample evidence
at trial to strengthen its case against appellant for the alleged aggravated
assault.  Excluding Mondier and Norris,
four other witnesses testified for the State. 
These included, Leland and Addock, the officers who arrested appellant
on suspicion that he was the assailant. 
At trial, these officers explained that they found appellant with a
bullet wound to his chest and in possession of a baseball bat.  More significantly, the officers stated that
appellant was in possession of a Lorcin .380 pistol.  Linking this gun to the assault, the State
presented testimony from Theresa Murphy, evidence identification manager for
the League City Crime Scene Unit handling the case.  Murphy=s testimony
indicated the Lorcin .380 found in appellant=s possession was
the gun used in the assault on Norris. 
Ballistics testing also showed the gun matched the shell casings
retrieved at the scene.  Thus, appellant was
sufficiently linked to the crime regardless of the testimonies from Mondier and
Norris.  On the other hand, appellant=s entire case
consisted of nothing more than an attempt to impeach Mondier regarding the
details of her crime and the effect of her plea.  Nothing elicited by trial counsel refuted the
State=s evidence or
otherwise indicated that appellant was not guilty of the offense.

After reviewing the entire record and
considering the strength of the State=s case, we are
convinced that the complained of evidence does not sufficiently Aundermine
confidence in the outcome of the trial.@  See Thomas, 841 S.W.2d at 404B05.  Even if appellant had been given complete
copies of the criminal records for Mondier and Norris, we do not believe it
would have made a significant difference at trial.  Neither do we believe that disclosure of the
alleged special plea agreementsCif, in fact, any
such agreements existedCwould have likely changed the outcome of
the trial.[5]  Appellant=s first point of
error is overruled.








Prosecutorial
Misconduct

In his second
point of error, appellant contends the State used misleading testimony to
present a false picture to the jury regarding the plea agreements entered into
between the State and its two key witnesses, Mondier and Norris.  Appellant also contends the State=s failure to
correct the false impression and its refusal to tender requested Brady material
 were acts of prosecutorial
misconduct which require reversal of his conviction.[6]

To preserve error in cases of prosecutorial
misconduct, the defendant must: (1) make a timely and specific objection; (2)
request an instruction that the jury disregard the matter improperly placed
before the jury; and (3) move for a mistrial.  Tex.
R. App. P. 33.1(a); Cockrell v. State, 933 S.W.2d 73, 89 (Tex.
Crim. App. 1996).  Here, appellant never
objected during the testimony of which he now complains.  Furthermore, nothing in the record indicates
that he requested a jury instruction or moved for a mistrial while the State
was allegedly misleading the jury.  Only
after the witnesses had been excused and the State had rested did appellant
file a written motion for mistrial. 
Therefore, his complaint came far too late to properly preserve
error.  Morrison v. State, 132
S.W.3d 37, 48 B49 (Tex. App.CHouston [14 Dist.]
2004, pet. ref=d) (holding that error was waived where A[n]othing in the
record show[ed] that appellant objected or moved for a mistrial when the
conduct in question occurred.@); see also
Reed v. State, 794 S.W.2d 806, 811 (Tex. App.CHouston [14th
Dist.] 1990, pet. ref=d) (explaining that a jury instruction to
disregard is a prerequisite for bringing such a complaint on appeal).








Even if appellant had properly preserved error on this point,
we find the trial court did not abuse its discretion in overruling his motion
for mistrial.  Mistrial is appropriate
for only Ahighly prejudicial and incurable
errors.@ 
Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003)
(quoting Wood v. State, 18 S.W.3d 642 (Tex. Crim. App. 2000)).  We review a trial court=s denial of a motion for mistrial
under an abuse of discretion standard.  Id. 
A trial court does not abuse its discretion when its decision is at
least within the zone of reasonable disagreement.  Wead v. State, 129 S.W.3d 126, 129
(Tex. Crim. App. 2004); Montgomery v. State, 810 S.W. 2d 372, 391 (Tex.
Crim. App. 1990).

Here, the trial court held a hearing outside the presence of
the jury on appellant=s motion for mistrial. 
At this hearing, both appellant=s counsel and the State=s chief prosecutor testified.  Counsel attempted to elicit testimony from
the prosecutor that Mondier and Norris received extremely light sentences in
exchange for their testimony against appellant. 
However, the prosecutor explained that neither witness received special
deals for his or her testimony and that neither of their sentences were
incredibly unique.  He also explained
that it was purely coincidence that both Mondier and Norris had the same
defense attorney in their cases and that the prosecutor in their cases was
serving as Asecond chair@ in appellant=s case.  Apparently, the court agreed there was no
connection and there were no secret, undisclosed deals and, thus, denied
appellant=s motion for a mistrial.  Absent some indicia in the record to indicate
the court abused it=s discretion in doing so, we must affirm.  See Simpson, 119 S.W.3d at
272.  After reviewing the entire record,
we find nothing to suggest the court=s decision is beyond the zone of
reasonable disagreement.  Therefore, we
find that the court did not abuse its discretion in denying appellant=s motion for mistrial.  Accordingly, we overrule appellant=s second point of
error.

The judgment of the trial court is affirmed.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Opinion filed September 13, 2005.

Panel
consists of Justices Yates, Anderson, and Hudson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  Appellant and
an accomplice allegedly had been paid by a third party to beat Mondier so badly
that she would no longer be able to dance. 
In pursuit of this objective, appellant and his accomplice stalked
Mondier for several weeks to determine her daily schedule.





[2]  Norris was
later convicted of possession of a firearm by a felon and sentenced to three
years in the penitentiary.  Mondier pled
guilty to possession of cocaine with the intent to deliver and was placed on
deferred adjudication for a term of three years and assessed a $500 fine.





[3]  This type of
evidence is commonly referred to as ABrady
material.@





[4]  Counsel told
the trial court that he attempted to look up the records the morning of trial
but was Aunclear how to use [the computer] completely@ in order to do so. 
He also admitted that the clerk would have permitted him to look at
Mondier=s criminal file, but he simply did not ask to do so.





[5]  Assuming the
State did enter into special plea agreements with Mondier and Norris, this
would weigh heavily in appellant=s favor
regarding Amateriality.@  However, nothing in the record substantiates
appellant=s contention that there were secret agreements in this
case.  In fact, both Mondier and Norris
stated under oath that they did not receive any special plea agreements in
return for testifying against appellant. 
The record reflects the following exchanges:

Q.   [By the State=s
attorney]: Did you and I before you came up, before you pled on [your drug
possession charge], get together and I promise you or anybody from our office
promise to be lenient on you if you came in and testified here?

A.   [By Mondier]: No.

*                      *                      *          

Q.   [By the State=s
attorney]: Why did you plead on the gun case if it was a self-defense scenario
and [the guns] were [Mondier=s] weapons?

A.   [By Norris]: Because I=m a felon.  I=m on parole.

Q.   What were you fearing if you didn=t plead?

A.   That they would prove I was in possession of
the firearm and I would get more time than the three years.  So I just pled out for three.

Q.   Did anybody come up to you before you pled
on that by the D.A.=s office and offer you any deal for testifying against
Mr. Garner?

A.   No, sir.

Thus, the
record refutes appellant=s contention that Mondier and Norris received deals in
return for their testimony against appellant. 
In fact, it is more plausible that the two testified against appellant
on their own account because they wanted to see the man who attacked them and
who shot Norris rightfully convicted.





[6]  We have
already held that appellant has no basis on which to complain about Brady
material.  Accordingly, we will only
address appellant=s contention that the State misled the jury.