NUMBER 13-06-00132-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

ESTEBAN GUTIERREZ, JR., Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 139th District Court


of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Benavides


Memorandum Opinion by Chief Justice Valdez
 

 A jury found appellant, Esteban Guiterrez, Jr., guilty of indecency with a child by
contact and indecency with a child by exposure. See Tex. Penal Code. Ann. § 21.11(a)(1),
(2) (Vernon 2003). The jury assessed punishment at two years' confinement and a fine
of $10,000. Appellant's prison sentence was probated for ten years. On appeal, appellant
contends that he is entitled to a new trial because: (1) the State failed to disclose allegedly
exculpatory evidence, and (2) the State presented false testimony. We affirm. 

I. Background 

 In 2003, sixteen-year-old S.B. worked as a lifeguard for the city of McAllen. 
Appellant was S.B's instructor and supervisor. At trial, S.B. recounted various incidents
of abuse, including an incident where appellant reached into S.B.'s "crotch area" and a
second incident where appellant kissed S.B. and "reached for [her] breast over [her] shirt." 
Most relevant here, however, is an incident that occurred on December 30, 2003, where,
according to S.B., appellant sexually assaulted her in the pool "pump house." 

 S.B. testified she worked the 6:00 to 9:00 p.m. shift, and that the only other
employee who was working that night was shift manager Margarita Reyes. S.B. further
testified that when appellant arrived at approximately 8:30 p.m., he asked her to
accompany him to the pump house so that he could show her how to manage the pool
chlorine levels. She agreed. According to S.B., after they walked into the pump house,
appellant closed the door behind them, turned off the lights, pulled her towards him, and
tried to kiss her. Although she pulled away, he grabbed her by the shoulder and pushed
her down over a stool, facing down. He then removed her shorts and underwear, took out
his penis, and put it in her vagina. 

 Appellant was indicted on one count of sexual assault, one count of indecency with
a child by contact, and one count of indecency with a child by exposure. See Id. §§
22.011, 21.11(a)(1), (2). All three counts were alleged to have occurred "on or about
December 30, 2003." A jury returned guilty verdicts for the indecency with a child by
contact and indecency with a child by exposure counts, but acquitted appellant of the
sexual assault count. Appellant filed a motion for new trial, which was denied. This appeal
followed. 

II. Discussion 

A. Standard of Review 

 All of the issues raised in this appeal were asserted by appellant in his motion for
new trial. We review a trial court's denial of a motion for new trial under an abuse of
discretion standard. Holden v. State, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). A trial
court abuses its discretion in denying a motion for new trial only when no reasonable view
of the record could support the trial court's ruling. Id. B. False Testimony As his second issue, (1) appellant argues that the State violated his right to due
process by presenting false testimony at trial. Specifically, appellant complains that S.B.'s
testimony that Reyes was the only other employee who worked December 30 was false,
and the State's failure to correct the false testimony led to an unfair trial. In support of his
claim, appellant, at the hearing on his motion for new trial, introduced time sheets as
evidence that Reyes worked on December 29 rather than December 30. (2) 

1. Applicable Law

 A prosecutor's knowing use of perjured testimony violates the Due Process Clause
of the Fourteenth Amendment to the United States Constitution. Mooney v. Holohan, 294
U.S. 103, 112 (1935). Likewise, a prosecutor's knowing failure to correct such testimony
denies a defendant due process. Napue v. Illinois, 360 U.S. 264, 269 (1959). It does not
matter whether the prosecutor actually knows that the evidence is false; it is enough if the
prosecutor should have recognized the misleading nature of the evidence. Duggan v.
State, 778 S.W.2d 465, 468-69 (Tex. Crim. App. 1989); Ramirez v. State, 96 S.W.3d 386,
395-96 (Tex. App.-Austin 2002, pet. ref'd). Nor is it significant that the falsehood goes
merely to an issue of credibility. Napue, 360 U.S. at 269. The jury's estimate of the
truthfulness and reliability of a given witness may well be determinative of guilt or
innocence, and it is upon such subtle factors as the credibility of witness that a defendant's
life or liberty may depend. Id. 

 From the record, we must determine: (1) if the State "used" the testimony; (2)
whether the testimony was "false"; (3) whether the testimony was "knowingly used"; and
(4) if the State's questions are affirmatively answered, whether there is a reasonable
likelihood that the false testimony could have affected the jury's judgment. Ramirez, 96
S.W.3d at 394-95. The State contends, and we agree, that appellant has failed to show
that the State "knowingly used" the testimony and that the testimony could have affected
the jury's judgment. 2. Analysis 

 At the motion for new trial hearing, the State prosecutor testified that he first came
across Reyes's name while reviewing various police reports within the case file. He
acknowledged that one particular report showed that S.B. had mentioned that Reyes was
the only other employee at the pool the night of the incident. He further testified that when
he contacted Reyes two weeks prior to trial, she denied recalling whether she worked the
night of the December 30 or whether she ever saw S.B. accompany appellant to the pool
pump house. Appellant's trial counsel testified that he had full access to the State's file in
this matter, and he acknowledged that nothing in the file gave him any reason to believe
that Reyes worked December 29 rather than December 30. It is apparent from the record that appellant came into possession of the time sheets
before the State did. On appeal, the State acknowledges that "the prosecution had not
thought to obtain the City's employee records, and was unaware, until it was brought out
by the defense at trial, that Reyes had not even worked on December 30. . . ." Apparently,
appellant first realized that S.B.'s testimony may have been incorrect when Linda Hughes,
appellant's sole defense witness, testified that the time sheets, introduced as evidence by
appellant's trial counsel, showed that Reyes had not worked on December 30. Nothing in
the record, however, shows that the State was aware of this fact when S.B. took the
witness stand. Reviewing the record in its entirety, we find no evidence that when the
State elicited S.B.'s testimony it was aware that S.B.'s claim that Reyes worked December
30 may have been false. 

 More importantly, appellant does not explain how any inconsistency mentioned by
S.B. could have affected the course or outcome of the trial. Appellant introduced the time
sheets into evidence at trial and the jury heard Hughes's testimony that Reyes did not work
on December 30. It is entirely possible, therefore, that in reaching its verdict the jury was
aware of the fact that S.B's testimony may have been incorrect. Appellant has simply
failed to show that the State knowingly elicited false testimony or that the false testimony
could have affected the ultimate judgment of the jury. See Ramirez, 96 S.W.3d at 394-95. 
We overrule appellant's second issue. 


C. Exculpatory Evidence 

 By his first issue, appellant argues that the State attorney's failure to disclose the
fact that he had contacted Reyes prior to trial and that she had provided him with
exculpatory information denied him due process of law. Attached to appellant's motion for
new trial is Reyes's affidavit, wherein she swears that she received two phone calls from
the District Attorney's office, and that she informed the prosecutor that although she had
no recollection of December 30, 2003, she "never saw [appellant] go to the pump house
when [S.B.] was working, and that [S.B.] was always on deck with [her] when there were
swimmers in the pool." Citing Brady v. Maryland, 373 U.S. 83, 87 (1963), appellant claims
that this information is exculpatory and could have been used for impeachment purposes. 

 In Brady, the United States Supreme Court concluded that the suppression by the
prosecution of evidence favorable to a defendant violated due process if the evidence is
material either to guilt or punishment, without regard to the good or bad faith of the
prosecution. See id.; Harm v. State, 183 S.W.3d 403, 405 (Tex. Crim. App. 2006); Wyatt
v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). To find reversible error under Brady,
a defendant must show that: (1) the State failed to disclose evidence, regardless of the
prosecution's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the
evidence is material, that is, there is a reasonable probability that had the evidence been
disclosed, the outcome of the trial would have been different. Hampton v. State, 86
S.W.3d 603, 612 (Tex. Crim. App. 2002); see Harm, 183 S.W.3d at 405.

1. Suppression

 The first element of Brady is present if the prosecution actively suppresses evidence
or negligently fails to disclose it. Juarez v. State, 439 S.W.2d 346, 348 (Tex. Crim. App.
1969); Smith v. State, 840 S.W.2d 689, 693 (Tex. App.-Fort Worth 1992, pet. ref'd); Taylor
v. State, 93 S.W.3d 487, 498-99 (Tex. App.-Texarkana 2002, pet. ref'd). While the State
has an affirmative duty to disclose, it is "not required to facilitate the compilation of
exculpatory material that could have been compiled by the defense." Taylor, 93 S.W.3d
at 499. Thus, without suppression, there is no Brady violation. Id.; see also Staten v.
State, 919 S.W.2d 493, 498 (Tex. App.-Fort Worth 1996, pet. ref'd) (explaining that no
Brady violation exists unless it is shown that the defendant was actually denied access to
the allegedly favorable material). 

 At the hearing on appellant's motion for new trial, appellant's counsel conceded that
the State maintained an open file policy with him throughout the proceedings below. 
Generally, if the State opens its file for examination by defense counsel, it fulfills its duty
to disclose Brady evidence. Brewer v. State, 126 S.W.3d 295, 305 (Tex. App.-Beaumont
2004, pet. ref'd). 

 Moreover, there is no evidence the State suppressed the alleged Brady material at
issue. At the new trial hearing, appellant's counsel testified that he had access to the
police report wherein S.B. mentioned that Reyes was the only other employee who worked
the night the alleged incident occurred. Indeed, appellant's counsel mentioned that he
attempted to contact Reyes but was unsuccessful. The State is not required to seek out
evidence for the defendant's use. See Taylor, 93 S.W.3d at 499. While the State is
required to produce exculpatory and impeachment evidence, the government is not
required to facilitate the compilation of exculpatory material that could have been compiled
by the defense. Id. Appellant was well aware that Reyes was mentioned in the police
report and thus could have reasonably expected her to provide either exculpatory or
inculpatory information. We would be hard pressed to construe appellant's apparent
inability to contact Reyes as evidence that the State intentionally or negligently withheld
evidence. See Taylor, 93 S.W.3d at 499; Staten, 919 S.W.2d at 498. 

2. Materiality 

 Assuming arguendo that the State did unlawfully suppress the evidence, appellant
still carries the burden of proving that the evidence was material, i.e., that it created a
probability sufficient to undermine confidence in the outcome of the proceedings. See
Thomas v. State, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992). "Evidence is material
under the third Brady factor where there is a 'reasonable probability' that the outcome of
the trial would have been different if the suppressed evidence had been disclosed to the
defendant." Taylor, S.W.3d 93 at 501. 

 At the hearing on appellant's motion for new trial, appellant's trial counsel
acknowledged that in his opening statement that he placed appellant and S.B. in the pump
house together but argued to the jury that it was S.B who made the initial advance. He
further acknowledged that because the incident occurred in the pump house, there were
no witnesses to the act itself. Thus, as the State properly points out, the fact that there
were no witnesses to the incident, and because appellant trial counsel advanced the
defensive theory that it had been S.B. who made the initial advance in the pump house,
Reyes's general statement that she "never saw [appellant] go to the pump house when
[S.B.] was working" would have very little, if any, effect on the outcome of the trial. See
Hampton, 86 S.W.3d at 612 (holding that "the mere possibility that an item of undisclosed
information might have helped the defense, or might have affected the outcome of the trial,
does not establish 'materiality' in the constitutional sense") (quoting United States v. Agurs,
427 U.S. 97, 109 (1976)). We conclude that Reyes's statement was not material based
on the record of this case. Appellant has not shown a reasonable probability that had the
statements been disclosed earlier, the outcome of the trial would have been different. See
id. at 612 n.26; Wilson, 7 S.W.3d at 146. 

 Appellant's second issue is overruled. 

III. Conclusion 

 We affirm the trial court's judgment. 
 

 


 ____________________ 

 ROGELIO VALDEZ,

 Chief Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 19th day of June, 2008. 
1. We address appellant's issues out of order for purposes of organization. See Tex. R. App. P. 47.1
(providing that the court of appeals must hand down a written opinion that is brief as practicable but that
addresses every issue raised and necessary to final disposition of the appeal). 
2. The record shows that the time sheets were introduced into evidence both at trial and at the hearing
on appellant's motion for new trial.