Lafonda MONKHOUSE, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–92–00015–CR.

Court of Appeals of Texas, Texarkana.

Aug. 31, 1993.

Jim Shaw, Fort Worth, for appellant.

Jack O. Herrington, County Atty., Clarksville, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Lafonda Monkhouse appeals from her conviction for possession of less than twenty-eight grams of a controlled substance. A jury found her guilty and assessed punishment at fifteen years' confinement.

On appeal, Monkhouse contends that the trial court erred in overruling her objections to the State's repeated questions regarding an extraneous offense during the punishment phase, that the State acted in bad faith in propounding questions that presented unfounded and inadmissible extraneous offense material to the jury, and that the trial court erred in overruling her objection to the State's improper jury argument in two instances during the punishment phase of the trial. The State has not filed a brief in response to these contentions.

Monkhouse contends that, during the punishment phase of the trial, the State improperly attempted to elicit evidence of extraneous misconduct by cross-examination of her mother, Ruby Stafford, a defense witness. During direct examination of Stafford, defense counsel attempted to establish that Stafford was aware of Lafonda Monkhouse's past involvement in criminal activities and that Lafonda had straightened out her life and had become a good person. Defense counsel specifically asked Stafford, "Is she [Monkhouse] around people that are in the drug world or drug culture so far as you know?" Stafford replied, "Not that I know of."

During cross-examination of Stafford, the following questions and answers occurred:

Q. [By prosecutor] Now, in response to [defense counsel's] questioning he asked you whether [Lafonda Monkhouse] is around people that are involved in the drug culture now. Do you remember him asking that?

A. Yes.

Q. And you said not that you know of.

A. Not that I know of, right.

Q. Now, where does her son—what is his name?

A. T.J.

Q. Where does he live?

A. With her.

Q. Now, has there been some recent problems involving her son?

MR. SHAW [Defense Counsel]: Excuse me, Your Honor, I don't see that that is relevant.

THE COURT: Sustained.

MR. HALL [Prosecutor]: May we approach the bench?

THE COURT: You may.

(The following proceedings were out of the presence and hearing of the jury.)

MR. HALL: Her son was recently arrested for selling marijuana.

MR. SHAW: What's that got to do with her?

MR. HALL: Drug culture. You asked her if she was involved.

MR. SHAW: She hangs around Gary Tempelton.

THE COURT: Her son is living with her?

MR. HALL: With her.

MR. SHAW: I don't think he has been arrested.

MR. HALL: He is a juvenile. He is 16.

THE COURT: We will overrule the objection.

MR. SHAW: Note our exception.

(The following proceedings were in the presence and hearing of the jury.)

By Mr. Hall:

Q. All right. T.J. Monkhouse is how old?

A. [Ruby Stafford] 16.

Q. And he lives with Lafonda?

A. With Lafonda.

Q. And has he recently had some problems involving drug delivery himself?

MR. SHAW: I'm going to object on relevancy grounds, Your Honor, for a 16 year old. If they have a case, let them prosecute him for a case. But that's not relevant to this case here.

THE COURT: Overruled.

MR. SHAW: Thank you.

By Mr. Hall:

Q. You can answer the question.

A. Ask it again.

Q. Has he had some recent problems involving delivery of drugs himself?

A. Not that I have any knowledge of.

Q. You don't have any knowledge of that?

A. No, I sure don't.

Q. You haven't heard that?

A. No.

MR. SHAW: Your Honor, it's argumentative now.

THE COURT: Sustained.

MR. SHAW: It's been asked in bad faith.

MR. STARNES: I will pass the witness.

THE COURT: Any more questions?

MR. SHAW: Nothing further.

THE COURT: Thank you, ma'am. You may step down.

Monkhouse argues that, although the question pertained to her son, the State intended his conduct to reflect on her and that this evidence had no legitimate bearing on the punishment question.

The question regarding whether Monkhouse's son, who lived with her, had been involved in a drug delivery, was invited by the defense's question and answer which opened the door by stating to the jury that Monkhouse was not around anyone in the drug world or drug culture. The State sought to counteract the impression which the defense had attempted to convey by the question on direct examination. Extraneous unadjudicated offenses may be admissible if the accused opens the door to the admission of such evidence. *Beasley v. State*, 838 S.W.2d 695 (Tex.App.—Dallas 1992, pet. ref'd). The State was justified in asking Stafford whether Monkhouse's son, who lived with her, had recently been involved in the delivery of drugs. *See Muse v. State*, 815 S.W.2d 769, 774 (Tex.App.—Waco 1991, no pet.).[1]

The four cases cited by Monkhouse in support of this contention are inapposite, in that in those cases the appellant did not open the door to complained-of questions as did Monk-

1. In *Muse v. State*, the defense counsel asked appellant if he had been in trouble with the law since a 1978 conviction, and appellant responded that he had not except for two speeding tickets. Appellant's response was sufficient to leave in the jurors' minds a false idea of exemplary conduct by appellant, and the State was justified in asking appellant about his conviction for possession in 1982 and for a later arrest for burglary, in order to remove the false impression of appellant's exemplary conduct. 815 S.W.2d 769 (Tex. App.—Waco 1991, no pet.).

house in the present case. *See Guzmon v. State*, 697 S.W.2d 404 (Tex.Crim.App.1985), *cert. denied*, 475 U.S. 1090, 106 S.Ct. 1479, 89 L.Ed.2d 734 (1986); *Fuentes v. State*, 664 S.W.2d 333 (Tex.Crim.App. [Panel Op.] 1984); *Kendrick v. State*, 729 S.W.2d 392 (Tex.App.—Fort Worth 1987, pet. ref'd); *Vester v. State*, 684 S.W.2d 715, 724 (Tex. App.—Amarillo 1983), *aff'd* 713 S.W.2d 920 (Tex.Crim.App.1986).

We hold that the trial court did not abuse its discretion in overruling Monkhouse's objections. This point of error is overruled.

■ Monkhouse also contends that the State acted in bad faith in propounding questions that presented unfounded and inadmissible extraneous offense material to the jury. During the punishment phase of the trial, after the trial court had overruled Monkhouse's objection to the prosecutor's question regarding Monkhouse's son, defense counsel stated to the court that the question had "been asked in bad faith." Monkhouse did not, however, ask the court to determine whether the question was in bad faith or to rule on the bad faith issue. He did not object that the prosecutor did not have evidence to support the asking of the question. *See Cavender v. State*, 547 S.W.2d 601, 603 (Tex.Crim.App.1977). Instead, after the jury charge had been given, and while the jury was deliberating, he made an informal bill of exception in question and answer form. *See* Tex.R.App.P. 52(b). This timing was contrary to Rule 52(b), which requires that a bill of exception shall be made as soon as practicable after the court excludes evidence, but before the court's charge is read to the jury.

In the bill of exception, the prosecutor testified that it was his understanding, from a drug task force report on a drug "sting" operation, that Monkhouse's son had sold a controlled substance to an undercover agent. Monkhouse attempted to establish by questions to the prosecutor that the report did not show that Monkhouse's son had been either arrested or detained as a result of the drug "sting" operation described in the report. The prosecutor insisted that it was his opinion that the son had been detained and that all of the parties in the "sting" operation had been detained or arrested.

■ An appellant must show bad faith by a prosecutor in order to prevail on such a contention. *See Guzmon v. State*, 697 S.W.2d at 410. The record in the present case does not demonstrate bad faith on the part of the prosecutor. This point of error is overruled.

■ In the next points of error, Monkhouse contends that the trial court erred in overruling her objections to improper jury arguments by the State during the punishment phase of the trial. Permissible jury argument falls within one or more of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Bell v. State*, 724 S.W.2d 780, 803 (Tex.Crim.App.1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973). An argument which exceeds these bounds will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, is violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceedings. *Bell v. State*, 724 S.W.2d at 803. If we determine that jury argument was improper, we must further determine whether the error was harmless. The test is not whether a conviction would have resulted without the improper argument; rather, it is whether there is a reasonable possibility that the argument might have contributed to either the conviction or to the punishment assessed. *Clarke v. State*, 785 S.W.2d 860, 870 (Tex. App.—Fort Worth 1990), *aff'd*, 811 S.W.2d 99 (Tex.Crim.App.1991). We review the entire record at both the guilt/innocence phase and the punishment phase of the trial. *Id.* at 871.

■ Monkhouse cites as the first improper argument the following:

[Prosecutor] What else do we know? Agent Templeton also said she didn't ask what he was going to do with these packets of amphetamine. Didn't care. Could have gone to pregnant mothers and school kids.

[Defense Counsel] Object. That's outside the record and it's improper.

[The Court] Overruled.

Although this statement was made as an inference to show that Monkhouse did not appear to be concerned about where the drugs she sold would be used or to whom the drugs would be sold, it invites speculation outside the record. We do not find that this statement alone constituted harmful error.

■ Monkhouse further contends that the prosecutor erred when he argued that Monkhouse was still selling drugs, citing the following comments:

[Prosecutor] All the facts show that she was a drug dealer. She may still be. You don't know.

[Defense Counsel] Objection. Excuse me. He is totally outside the record and it's an argument made in bad faith. [This objection was overruled.]

. . . .

[Prosecutor] We would ask that you send her to the penitentiary, not just send her to the penitentiary, send her for enough time that's going to do her some good. I don't know, 10, 15, 20 years. Let's put her away for awhile. Let's send a real message to her.

The last paragraph cited by Monkhouse does not reflect any argument beyond the State's urging of a penalty within the punishment range for the offense for which Monkhouse had been convicted. This argument was not tied to the other statement made by the prosecutor, other than occurring in the same final argument, and it appears many pages in the record after the objected-to argument. This argument was not objected to at the trial and does not constitute error.

■ Monkhouse correctly states that it is error for the State to make statements during jury argument that would lead the jury to speculate on extraneous offenses or other matters that are not in evidence, citing *Lomas v. State*, 707 S.W.2d 566 (Tex.Crim. App.1986), and *Hamilton v. State*, 818 S.W.2d 880 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). In *Berryhill v. State*, the court said that inviting speculation is even more dangerous than injecting matters not in the record because it leaves the extraneous facts to the imagination of each juror. 501 S.W.2d 86, 87 (Tex.Crim.App.1973). The purpose of a closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App. [Panel Op.] 1980). The trial court erred in not sustaining the objection to the prosecutor's statement that Monkhouse may still be a drug dealer because the State's argument improperly implied the existence of extraneous offenses outside the record.

■ One of the main reasons for restraining the prosecutor and demanding a high standard of care in closing argument is that, due to the position of a prosecutor as a public official, an illusion to extrinsic evidence and interjection of his own views may be given undue weight by the jurors. *See United States v. Herberman*, 583 F.2d 222 (5th Cir.1978). The statement in the present case was calculated to convey the impression that Monkhouse was still dealing drugs, and the innuendo created by the statement "[y]ou don't know" is that the State knew but was not allowed to tell the jurors.

■ The offense for which Monkhouse was on trial had occurred nearly three years prior to the trial. The main thrust of the defense at the punishment stage of the trial was to show that Monkhouse had successfully completed a drug rehabilitation program, that she had worked faithfully at her job, and that she had made a change for the better. All the testimony presented, including that of her probation officer, showed that Monkhouse had not had any problems with violations of the law or unseemly conduct during the last eight or nine months. The statement by the prosecutor to the jury undermines this defense by inviting the jury to speculate that she deserved to be punished, not only for the conviction on trial, but because she was still dealing drugs. Evidence of the one sale of amphetamines by the defendant did not support prosecutor's argument that at the time of the trial she was continuing to make sales of illegal drugs. *See Rodriquez v. State*, 520 S.W.2d 778 (Tex.

Crim.App.1975). The implied existence of Monkhouse continuing to traffic in drugs was clearly outside the record and impermissible. *See Simpson v. State,* 493 S.W.2d 793 (Tex. Crim.App.1973). The argument by the prosecutor amounted to unsworn testimony that Monkhouse was guilty of being a habitual drug dealer when only one transaction was in evidence. *See Williams v. State,* 128 Tex. Crim. 577, 82 S.W.2d 975 (1935). The State should avoid presenting an argument that encourages the jury to include in a verdict additional punishment for collateral crimes or for a defendant being a criminal generally. *Lomas v. State,* 707 S.W.2d 566.

When an argument exceeds the permissible bounds, such will not constitute reversible error, unless, in the light of the record as a whole, the argument is extreme or manifestly improper, is violative of a mandatory statute, or injects new facts harmful to the accused and to the trial proceedings. *Mathews v. State,* 635 S.W.2d 532 (Tex.Crim.App. [Panel Op.] 1982). The test to determine whether improper jury argument is harmless error is whether there is a reasonable possibility that the argument complained of might have contributed to the conviction or the punishment assessed. *Garrett v. State,* 632 S.W.2d 350, 353–54 (Tex.Crim.App. [Panel Op.] 1982).

■ The prosecutorial argument in the present case was calculated to be highly prejudicial because it sought to compound Monkhouse's criminal activity by implying that many months after her arrest she was still continuing her activities as a drug dealer. The jury denied the probation for which she had applied and assessed her punishment at fifteen years' confinement in the penitentiary out of a maximum range of twenty years. We cannot say that beyond a reasonable doubt this injection of matters outside the evidence which served as an invitation to the jury to speculate did not contribute in any way to the assessment of punishment in this case. This point of error is sustained.

The judgment of the trial court is reversed on punishment only, and the case is remanded for a new trial on punishment.