In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00096-CR
______________________________


ARTHUR DELL DUVALL, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the County Court at Law
Hunt County, Texas
Trial Court No. CR0100796


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Arthur Dell Duvall appeals his conviction for driving while intoxicated. A jury found Duvall
guilty, and the trial court sentenced him to sixty days in the Hunt County Jail. Duvall's sole issue
on appeal is whether the State's closing argument implying Duvall was an alcoholic is reversible
error. We affirm the judgment of the trial court.
Â Â Â Â Â Â Â Â Â Â Â Â On February 2, 2001, at approximately 10:30 p.m., Duvall, a sixty-nine-year-old man, was
traveling east on Interstate 30 in Hunt County. When Duvall swerved to miss a slow-moving
vehicle, moving approximately thirty miles per hour or less, he lost control of his vehicle. His
vehicle, a minivan, rolled and came to a stop upside down, with Duvall hanging from the seat belts. 
Two witnesses, Dane Cofer and John Watson, stopped and cut Duvall free from the seat belt. Both
Cofer and Watson had been able to avoid the slow-moving vehicle immediately before Duvall. 
When Trooper Chris Earnest, an officer with the Texas Department of Public Safety, arrived at the
scene, he noticed an odor of alcohol on Duvall's breath. Duvall informed Earnest he had drunk
"about three beers" at the VFW that night. Earnest performed the horizontal gaze nystagmus test on
Duvall and testified he observed all six clues of intoxication. Earnest arrested Duvall for driving
while intoxicated. At the jail, Duvall refused to submit a specimen of his breath into the intoxilyzer. 
Â Â Â Â Â Â Â Â Â Â Â Â The closing argument of the State implied Duvall was an alcoholic. Duvall argues that this
improper argument resulted in harm which could not be cured by the limiting instruction. Duvall
argues the trial court should have granted him a mistrial.
Â Â Â Â Â Â Â Â Â Â Â Â The offending portion of the closing argument is as follows:
[Prosecutor]: . . . . Now, remember in voir dire we talked about you've got
alcoholics and not all people exhibit all of the signs of intoxication. The defendant
wants you to say, well, he didn't have this and he didn't have this and he didn't have
this. Everyone is different. Everyone is different. He still exhibited all of these
signs. We've talked about how there are people out there who are alcoholics - -
Â 
[Defense Counsel]: Objection, Your Honor. There was no evidence in this
trial that the defendant was an alcoholic at any time. She's trying to make him out
to be an alcoholic and that was never introduced in evidence, even referenced
slightly. We object to the reference of my client being termed an alcoholic.
Â 
[Prosecutor]: May I respond?
Â 
THE COURT: Yes, ma'am.
Â 
[Prosecutor]: Your Honor, the defendant has clearly stated that there aren't
particular signs here, and I think a reasonable inference from the evidence is that, if
there aren't any signs, then it could be possibly that he is an alcoholic.
Â 
THE COURT: Well, there has been no evidence, and as the jury was
instructed in the instructions and what the law is, they can only take what was said
on the witness stand, with your depositions, into consideration, into evidence in this
matter. They can infer whatever they want to, but there has been no testimony that
he's an alcoholic.
Â 
[Prosecutor]: Your Honor, for argument, I believe proper argument is
reasonable inference from the evidence.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â [Defense Counsel]: That's exactly what my objection was.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â [Prosecutor]: I'll go on. I'm wasting time.
Â 
[Defense Counsel]: We would ask that the jury be made to disregard those
comments.
Â 
THE COURT: Again, the jury is to take the evidence that was presented to
them and not anything that wasn't evidence. I think that instruction is sufficient.
Â 
[Defense Counsel]: Defendant moves for a mistrial at this point based on
prosecutorial misconduct.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â THE COURT: Overruled. Denied.

Â Â Â Â Â Â Â Â Â Â Â Â Texas law requires that permissible jury argument fall within one or more of the following
four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3)
answer to argument of opposing counsel; and (4) plea for law enforcement. Guidry v. State, 9
S.W.3d 133, 154 (Tex. Crim. App. 1999); Wilson v. State, 7 S.W.3d 136, 147 (Tex. Crim. App.
1999); Lagrone v. State, 942 S.W.2d 602, 619 (Tex. Crim. App. 1997). The trial court abuses its
discretion if it permits argument outside these four areas. See Dinkins v. State, 894 S.W.2d 330, 357
(Tex. Crim. App. 1995).
Â Â Â Â Â Â Â Â Â Â Â Â The State argues Duvall was not explicitly called an alcoholic. While this is true, the
statement implies the defendant was an alcoholic. The State was offering this argument to refute
Duvall's argument that he was not behaving like a typical person who was under the influence of
alcohol. The State was arguing that, if Duvall was an alcoholic, he may not exhibit all the symptoms
of intoxication. Because not all the symptoms were present, the State's closing argument implies 
Duvall is an alcoholic. Further, the State argued to the court that such statement was a reasonable
inference from the evidence because "it could be possibly that he is an alcoholic." This argument
was made to the court in the presence of the jury. Our conclusion is that the State did characterize
the defendant as an alcoholic. 
Â Â Â Â Â Â Â Â Â Â Â Â Duvall argues that the reference to Duvall as an alcoholic was an impermissible jury
argument. Duvall cites Jordan v. State, 646 S.W.2d 946, 948 (Tex. Crim. App. 1983), and
Monkhouse v. State, 861 S.W.2d 473, 478 (Tex. App.âTexarkana 1993, no pet.), in support of this
contention. In Jordan, the Texas Court of Criminal Appeals held it was error for the State to suggest 
the defendant had needle marks on his arms when there was no evidence to support such a statement. 
Jordan, 646 S.W.2d at 948. In Monkhouse, this Court held the State's argument the defendant may
still be a drug dealer was improper because it implied the existence of extraneous offenses outside
the record. Monkhouse, 861 S.W.2d at 478. In rare circumstances, certain characterizations of a
defendant may not be error if supported by the evidence,


 but characterizations not supported by the
evidence are clearly error.


 There was no evidence Duvall was an alcoholic, nor is such a conclusion
a reasonable deduction from the evidence. 
Â Â Â Â Â Â Â Â Â Â Â Â Â The State argues that the argument was in response to Duvall's argument he did not display
evidence of intoxication. In his closing argument, Duvall's attorney stated that:
[H]e was walking around okay. No one said he wasn't walking around okay. Ladies
and Gentleman, you don't have the things that they really classically like to throw at
you on a case of intoxication. No bloodshot eyes, no slurred speech. One person
said perhaps. No stumbling, no staggering, no fumbling for records, no inability to
provide information, no incoherence, no problems walking, a slight sway during the
HGN, no strong odor of alcoholic beverage.

The State asserts that its alcoholic argument falls within the permissible area of jury argument as a
proper response to the defense argument. The State also argues that it was trying to ask the jury
members to recall that during voir dire several jury members stated that alcoholics they knew in their
personal lives did not always exhibit signs of intoxication after consuming alcoholic beverages. 
Â Â Â Â Â Â Â Â Â Â Â Â The suggestion Duvall might be an alcoholic has a much greater implication than to merely
explain why all the typical manifestations of intoxication were not seen. The word "alcoholic" has
many undesirable connotations. While the State could have argued in general terms that not all
people exhibit the same symptoms of intoxication, the State chose to imply to the jury the defendant
was an alcoholic. As this Court noted in Monkhouse, "it is error for the State to make statements
during jury argument that would lead the jury to speculate on extraneous offenses or other matters
that are not in evidence." Monkhouse, 861 S.W.2d at 478. Because the State implied Duvall was
an alcoholic, the jury may have assumed the State had additional evidence of alcoholism not
presented at trial. Our justice system cannot condone an argument that would lead a jury to assume
facts which are not in evidence. 
Â Â Â Â Â Â Â Â Â Â Â Â The argument that not all persons exhibit the same symptoms of intoxication can be made 
without requiring an assumption that Duvall is an alcoholic. The State's response to the defense
argument "does not exceed the scope of the invitation." Andujo v. State, 755 S.W.2d 138, 144 (Tex.
Crim. App. 1988); Villarreal v. State, 79 S.W.3d 806, 813 (Tex. App.âCorpus Christi 2002, pet.
ref'd). The State could have argued that not all people display the same symptoms of intoxication. 
It is common knowledge that the effects of alcohol cause different symptoms of intoxication in
different people. Since the argument could have been made without the harmful characterization of
Duvall, the argument exceeded the permissible scope of a response to the defense argument. 
Therefore, the implication Duvall was an alcoholic was improper jury argument.
Â Â Â Â Â Â Â Â Â Â Â Â Having found that the State committed improper jury argument, we must now determine if
the trial court committed reversible error. Duvall argues that the implication is so prejudicial it
cannot be cured. We do not believe that the trial court committed reversible error.
Â Â Â Â Â Â Â Â Â Â Â Â Generally, Â in Â order Â to Â preserve Â a Â complaint Â for Â appellate Â review, Â the Â record Â must show
(1) that the complaint was made to the trial court by a request, objection, or motion that was timely
and sufficiently specific to make the trial court aware of the grounds of the complaint, and (2) that
the trial court ruled adversely. Tucker v. State, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999). If the
objection is sustained, counsel must then ask for an instruction to disregard the evidence. Nethery
v. State, 692 S.W.2d 686, 701 (Tex. Crim. App. 1985); Schumacher v. State, 72 S.W.3d 43, 47 (Tex.
App.âTexarkana 2001, pet. ref'd). If the instruction is given, counsel must then move for a mistrial.
Schumacher, 72 S.W.3d at 47 (citing Nethery, 692 S.W.2d at 701)). If counsel does not pursue the
objection to an adverse ruling, error is not preserved. Tex. R. App. P. 33.1; Ramirez v. State, 815
S.W.2d 636, 643 (Tex. Crim. App. 1991). Duvall's counsel objected to the argument, and his motion
for a mistrial was denied. Since Duvall's attorney pursued the objection until he received an adverse
ruling, the error was preserved.
Â Â Â Â Â Â Â Â Â Â Â Â In the alternative, the State argues that, if the argument was improper, the harm was cured
by the court's instruction to the jury. Most comments that fall outside the areas of permissible
argument will be considered error of the nonconstitutional variety. Martinez v. State, 17 S.W.3d
677, 692â93 (Tex. Crim. App. 2000). Since the State's comments do not raise any unique concerns
requiring constitutional issues, we will apply the standard of review for nonconstitutional errors. 
Rule 44.2(b) provides that a nonconstitutional error "that does not affect substantial rights must be
disregarded." Tex. R. App. P. 44.2(b). After the new harmless error rule was adopted, the Texas
Court of Criminal Appeals adopted the federal harmless error test for improper jury arguments. 
Under this test, courts should examine three factors: "(1) severity of the misconduct (the magnitude
of the prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct
(the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent
the misconduct (the strength of the evidence supporting the conviction)." Martinez v. State, 17
S.W.3d 677, 692â93 (Tex. Crim. App. 2000); Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim.
App. 1998); see Charles F. Baird, Standards of Appellate Review in Criminal Cases, 42 S. Tex. L.
Rev. 707, 753 (2001).
Â Â Â Â Â Â Â Â Â Â Â Â The first factor requires consideration of the magnitude of the prejudicial effect of the State's
argument. The State did not explicitly say that Duvall was an alcoholic or that as an alcoholic he
would again drive while intoxicated. The State did not emphasize or repeat the erroneous comments
and the comments, formed a rather small portion of the State's entire closing argument. Thus, the
degree of misconduct was relatively minor and therefore favors a finding of harmless error. 
Â Â Â Â Â Â Â Â Â Â Â Â Under the second factor, we must consider the measures adopted to cure the improper
argument. In many instances, an instruction to the jury to disregard improper argument is sufficient
to cure the error. See Dinkins, 894 S.W.2d at 357; see also Moore v. State, 999 S.W.2d 385, 405â06
(Tex. Crim. App. 1999). The trial court agreed there was no evidence Duvall was an alcoholic and
instructed the jury to "take the evidence that was presented to them and not anything that wasn't
evidence." While this curative instruction could have been more explicit in instructing the jury to
disregard the argument, it instructed the jury no evidence was present that Duvall was an alcoholic
and that the jury was to base its decision on the evidence presented. Thus, the measures adopted to
cure the improper argument favor a finding of harmless error.
Â Â Â Â Â Â Â Â Â Â Â Â As to the third factor, while there is ample evidence supporting the verdict, there is some
evidence on which a rational jury could have concluded the State failed to meet its burden. 
Â Â Â Â Â Â Â Â Â Â Â Â The State did present persuasive evidence Duvall had been driving while intoxicated. Duvall
admitted drinking. He informed Earnest he had drunk "about three beers" that night. Earnest said
he smelled a "deep chest odor of alcohol" from Duvall, contrasting that to an odor from an open
container of an alcoholic beverage. He further found unopened containers of alcohol in Duvall's
vehicle. While Heather Woodruff, an employee of America Medical Response, treated Duvall for
his injuries, she noticed an odor of alcohol. Cofer testified Duvall had slurred speech and "was not
exactly steady on his feet." Cofer also stated there was a "general mall [sic] odor about the situation
that tended to make me think that alcohol was involved." Earnest testified he observed all six clues
of intoxication when he performed the HGN test. Further, Duvall refused to submit a specimen of
his breath into the intoxilyzer or to perform either the walk-and-turn or the one-legged stand sobriety
tests. Thus, the State presented considerable evidence Duvall was driving while intoxicated.
Â Â Â Â Â Â Â Â Â Â Â Â Duvall's conviction was not absolutely certain. Neither Cofer nor Watson noticed an odor
of alcohol on the defendant. Cofer testified Duvall had slurred speech and "was not exactly steady
on his feet," but does not remember smelling any alcohol when he talked with Duvall. Watson
testified he did not smell any alcohol, but admitted his primary concern was the welfare of Duvall. 
Although Woodruff and Earnest did notice an odor of alcohol, the fact the other witnesses did not
detect such odor could create doubt as to how strong the odor was. Duvall did fail the HGN test
according to Earnest. However, evidence indicates the test was not performed "exactly" as the
officer was trained. Duvall was a sixty-nine-year-old man who had just been in a severe car
accident. We cannot conclude Duvall's conviction was certain. While there is significant evidence
indicating Duvall was intoxicated, a conviction was not a foregone conclusion. The third factor does
not clearly weigh for or against a finding of harmless error.
Â Â Â Â Â Â Â Â Â Â Â Â After carefully balancing the foregoing factors, we conclude the error to be harmless in this
case. We affirm the judgment of the trial court.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â February 19, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â February 25, 2004

Do Not Publish


Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-10-00002-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  WILLIAM LEE SMARR,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 115th
Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Upshur County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial
Court No. 15,237

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Chief Justice Morriss








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  No doubt,
William Lee Smarr had ingested a mix of legal prescription medications[1]
before he attempted to drive his three children home after a day-long fishing
trip, ultimately resulting in a jury deciding that Smarr was guilty of DWI,
with child passengers, and assessing a sentence of fifteen monthsÂ
confinement.Â  The trial court sentenced
Smarr consistent with the juryÂs assessment.Â 
The questions before us on SmarrÂs appeal concern the sufficiency of the
evidence to prove that Smarr drove without his normal mental or physical
faculties because he had ingested medications.Â 
Because we determine that the evidence was legally and factually
sufficient, we affirm the judgment of the trial court.

Â Â Â Â Â Â Â Â Â Â Â  As the Smarr
vehicle approached SmarrÂs house, its erratic movements suggested SmarrÂs
distress.Â  First, the vehicle stopped in
the middle of the road with its motor running.Â 
Then, with Smarr apparently unconscious or semiconscious, the vehicle
began moving forward.Â  When Smarr did not
respond to his childrenÂs calls, and the vehicle passed SmarrÂs driveway, one
quick-thinking son got down on the floorboard and held SmarrÂs foot on the
brake pedal while the other quick-thinking son steered the vehicle off the
road.Â  

Â Â Â Â Â Â Â Â Â Â Â  By the time
the police arrived, Candace Smarr, the childrenÂs mother and SmarrÂs ex-wife,
had taken the children to their residence located Âright back up the roadÂ and
had returned to the scene.Â  Ms. Smarr
told the police that Smarr had taken too much medication.Â  Smarr was transported to a local hospital in
an ambulance and was diagnosed as suffering from an overdose of prescription medication.Â  Approximately nine days later, Smarr was
diagnosed as suffering from mild hypoglycemia (low blood sugar).

Â Â Â Â Â Â Â Â Â Â Â  On appeal,
Smarr argues the evidence is legally and factually insufficient to support the
juryÂs verdict.Â  The State was required
to prove that Smarr did not have Ânormal use of mental or physical faculties by
reason of the introduction of . . . a drug . . . into the body.ÂÂ  See
Tex. Penal Code Ann. Â§Â§ 49.01,
49.04 (Vernon 2003), Â§ 49.045 (Vernon Supp. 2009).Â  SmarrÂs argument is limited to whether he was
intoxicated by reason of the introduction of a drug.Â  Smarr points out that the police and medical
personnel at the hospital never bothered to look for any cause of SmarrÂs impairment
other than the one suggested by SmarrÂs recently divorced wifeÂan overdose of
medication.Â  According to Smarr, his
conviction is the result of this myopia.Â 
Smarr posits that the evidence establishes reasonable doubt that his
condition was caused by the introduction of a drug into his body, rather than
the result of hypoglycemia compounded by dehydration.

Â Â Â Â Â Â Â Â Â Â Â  In conducting a legal sufficiency
review, we consider the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.Â  Laster v. State, 275 S.W.3d 512, 517
(Tex. Crim. App. 2009).Â  We must give
deference to Âthe responsibility of the trier of fact to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.ÂÂ 
Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson
v. Virginia, 443 U.S. 307, 318Â19 (1979)).Â  

Â Â Â Â Â Â Â Â Â Â Â  In conducting a
factual sufficiency review, we consider the evidence in a neutral light.Â  Watson v. State, 204 S.W.3d 404,
414Â15 (Tex. Crim. App. 2006).Â  We may
find evidence factually insufficient in two ways:Â  (1) the evidence supporting the conviction is
Âtoo weakÂ to support the fact-finderÂs verdict, or (2) considering conflicting
evidence, the fact-finderÂs verdict is against the great weight and
preponderance of the evidence. Â Laster,
275 S.W.3d at 518.Â  Both legal and
factual sufficiency are measured by the elements of the offense as defined by a
hypothetically correct jury charge.Â  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v.
State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008).

Â Â Â Â Â Â Â Â Â Â Â  David Cruze,
a deputy with the Upshur County SheriffÂs Office, testified that, at the scene,
Smarr had Âdifficulty maintaining his balanceÂ:

As I asked him to walk back to my car,
he was stumbling, he had to grab onto the side of the truck to keep his - - to
keep his balance, and as we got to the back of the truck, past the back of his
vehicle, I was walking to his right, he just fell to the left and started
stumbling real hard to the [l]eft and I had to actually grab him by his arm to
keep him from falling down, which he would have.

Â 

Smarr informed Cruze he had not had anything to drink, but
had taken his medication.Â  Cruze did not
smell any odor of alcohol on Smarr and did not find any alcohol in the
vehicle.Â  

Â Â Â Â Â Â Â Â Â Â Â  Wes Whalen,
a paramedic for the East Texas Medical Center, testified that, at the scene,
SmarrÂs speech was slurred and he appeared to be intoxicated.Â  Whalen testified that Smarr told him he had
ingested a morphine tablet and that SmarrÂs vehicle contained prescription
bottles of Alprazolam (Xanax), Soma, and Norco.Â 
Smarr had been prescribed a sustained-release form of morphine referred
to in the record as MS-Contin.Â  Whalen
testified he performed a test for blood sugar, referred to as a D-stick, at the
scene, but did not know the results.Â 
Whalen testified that a saline solution was administered to Smarr
intravenously.Â  

Â Â Â Â Â Â Â Â Â Â Â  At the
hospital, Smarr was examined by Dr. Brian Kempton, an emergency physician.Â  When Kempton first examined Smarr, Smarr had
slurred speech, responded slowly to questions, and appeared lethargic.Â  Kempton testified that Smarr seemed not to
understand he was lethargic and concluded SmarrÂs Âinsight into what was going
on seemed impaired.ÂÂ  The hospital took a
sample of SmarrÂs blood approximately thirty-three minutes after KemptonÂs
first visit.Â  Kempton testified that
SmarrÂs blood did not contain detectable levels of alcohol.Â  SmarrÂs blood tested positive for opiates and
benzodiazepine, but the quantity of those substances was not determined.Â  Smarr denied taking an overdose of his
medication.Â  Two of SmarrÂs prescribed
drugs, MS-Contin, which is a sustained-release form of morphine, and Norco,
which is a form of hydrocodone, would Âshow up positive as opiatesÂ in a blood
test.Â  The Xanax prescribed to Smarr is a
benzodiazepine.Â  When asked if a person could
be intoxicated on a mixture of ÂSoma, Norco, Xanax, morphine, even if they were
within therapeutic levels,ÂÂ  Dr. Kempton
responded,Â  ÂIÂd say thereÂs a
significant interaction among those that would -- I think anybody who took that
would be intoxicated.ÂÂ  When asked if
anything in his report would lead him to believe Smarr was in hypoglycemic
shock, Kempton responded, ÂNothing here . . . Normal people donÂt get
hypoglycemic.Â  I mean, that just is
vanishingly rare.ÂÂ  Kempton testified his
notes do not indicate a result for the D-stick test for SmarrÂs blood-sugar
level, but also testified EMS personnel normally check a patientÂs blood-sugar
level.Â  Kempton diagnosed Smarr as
suffering from a drug overdose and testified it was Âpretty obvious that [Smarr]
was heavily intoxicated on multiple substances.ÂÂ  Kempton testified that he treated Smarr for
only forty minutes and that his interaction with Smarr was pretty limited.Â  

Â Â Â Â Â Â Â Â Â Â Â  Just minutes
after the blood sample was drawn, there was a shift change at the hospital.Â  Dr. David Buller, a physician who has a
family practice and also works as an ER physician at the hospital, came on
duty.Â  By a coincidence, Buller was
SmarrÂs family physician.Â  At the
hospital, Buller diagnosed Smarr as suffering from a drug overdose.Â  Buller did not order any additional testing
at the hospital, and Smarr was discharged from the hospital approximately
forty-four minutes after Buller came on duty.Â 
Buller, though, was surprised at SmarrÂs quick recovery and testified he
Âwould not expect a drug overdose to cure that rapidly.Â[2]Â  Buller testified Smarr had been a patient of
his for more than five years and was taking the medications before becoming his
patient.Â  Buller testified that, if the
medications had been taken as prescribed, Smarr would have been safe to drive a
motor vehicle.Â  Approximately nine days
after SmarrÂs hospital visit, Buller conducted a glucose tolerance test on
Smarr and diagnosed Smarr with mild hypoglycemia.[3]Â  The results of the glucose tolerance test
caused Buller to revise his diagnosis and to conclude that SmarrÂs condition
was the result of multiple factors including hypoglycemia, dehydration,[4]
and the medications.Â  Buller testified,
Â[T]here are -- I believe are multiple factors involved, hypoglycemia could be
a possibility, drinking Monster drinks which he admitted to could be a
contributing factor in addition to taking his regular dose of medication.ÂÂ  Buller admitted that SmarrÂs blood test at
the hospital indicated a glucose level of 97, a normal level.Â  Buller testified that SmarrÂs body could have
corrected the blood-sugar level in the hour between the arrest and the blood
test through Âa process of glucogensisÂ where Âthe body would recognize the
sugar is lowÂ and Âwould take protein and fat and convert it back into sugar,
raise the blood sugar back up to a level that the body likes.Â[5]Â  The State cross-examined Buller:

Q.Â Â Â Â Â Â Â  .
. . in an hour and 41 minutes youÂre telling me itÂs normal for you to raise
your glucose level that high?

Â 

A.Â Â Â Â Â Â Â  ThatÂs
not what I said.

Â 

Q.Â Â Â Â Â Â Â  ItÂs
not normal, is it?

Â 

A.Â Â Â Â Â Â Â  ThatÂs
not what I said.

Â 

Q.Â Â Â Â Â Â Â  Okay.Â  Is that normal?

Â 

A.Â Â Â Â Â Â Â  Unlikely.

Â 

Q.Â Â Â Â Â Â Â  Unlikely.

Â 

A.Â Â Â Â Â Â Â  Uh-huh, to go that big a distance.Â  ThatÂs why my opinion is more than one thing
involved.

Â 

When asked, ÂCan you say with any medical probability that he
was in the condition he was due to a drug overdose on that day,Â Buller
responded, ÂI cannot.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  The State
limits its appellate argument to whether the evidence is sufficient to show
that Smarr took an overdose of his prescription medication.Â  The State, though, was not required to prove
Smarr took an overdose.Â  The fact that a
defendant was entitled to use prescribed medication is not a defense to DWI. Â See Tex. Penal Code Ann. Â§ 49.10 (Vernon Supp.
2009).Â  Â[A] person may drive after
taking a prescription medication so long as that person has not lost the normal
use of his mental or physical faculties by reason of introduction of the
prescription drug into his body.ÂÂ  Paschall v. State, 285 S.W.3d 166, 178
(Tex. App.ÂFort Worth 2009, pet. refÂd).Â 
Thus, our review is not concerned with whether the evidence supports a
conclusion that Smarr took more medication than prescribed.Â  The question, rather, is whether the evidence
supports a conclusion that SmarrÂs impaired condition resulted from ingesting
prescription drugs, regardless of the amount.[6]

Â Â Â Â Â Â Â Â Â Â Â  A rational
person could have concluded that, beyond a reasonable doubt, Smarr was
guilty.Â  The jury could have chosen to
believe KemptonÂs diagnosis over the diagnosis of Buller.Â  Kempton testified the prescription drugs
could have caused Smarr to be intoxicated even if taken at therapeutic levels
and, in his opinion, SmarrÂs condition was the result of SmarrÂs prescription
drugs.Â  The jury could have rejected
BullerÂs testimony.Â  The evidence is
legally sufficient.

Â Â Â Â Â Â Â Â Â Â Â  The
next question is whether the evidence is factually sufficient to support the
juryÂs verdict.Â  Buller testified SmarrÂs
hypoglycemia and dehydration may have contributed to SmarrÂs condition.Â  We note that Âa defendant cannot be found to
be intoxicated if he lacks the normal use of mental or physical faculties for a
different reason, such as disability, illness, fatigue, stress, or clumsiness.Â
Â Hernandez
v. State, 107 S.W.3d 41, 51 (Tex. App.ÂSan Antonio 2003, pet. refÂd); see Drapkin
v. State, 781 S.W.2d 710, 711 (Tex. App.ÂTexarkana 1989, pet. refÂd)
(ÂFatigue is not an affirmative defense.Â 
It is an alternative cause.Â); Massie
v. State, 744 S.W.2d 314, 316 (Tex. App.ÂDallas 1988, pet. refÂd); cf. Atkins v. State, 990 S.W.2d 763, 767
(Tex. App.ÂAustin 1999, pet. refÂd) (error to give instruction on synergistic
effect of fatigue and alcohol).

Â Â Â Â Â Â Â Â Â Â Â  In a factual
sufficiency review, however, we may
find the evidence insufficient only when necessary to prevent manifest
injustice. Â Laster, 275 S.W.3d at
518.Â  Although we give less deference to
the verdict in a factual sufficiency review, we will not override the verdict
simply because we disagree with it.Â  Id.Â  Buller testified merely that SmarrÂs
hypoglycemia was a factor in causing the condition.Â  According to Buller, the condition was caused
by multiple factors, including hypoglycemia, dehydration, and the prescribed
medications, acting together.Â  Thus,
BullerÂs testimony does not establish that hypoglycemia and dehydration caused
SmarrÂs impairment by themselves, or conversely that the drugs did not cause
it.Â  Even according to Buller, the
prescribed medication still played a role in SmarrÂs condition.Â  The overwhelming great weight and preponderance
of the evidence does not dictate a finding against SmarrÂs drug ingestion
causing his impairment.Â  Nor is the
evidence of medication-caused impairment so weak that the State failed to
establish SmarrÂs guilt beyond a reasonable doubt.Â  Our skepticism about the juryÂs conclusion is
not sufficient to reach the high level required to reverse a juryÂs
verdict.Â  The evidence is factually
sufficient.

Â Â Â Â Â Â Â Â Â Â Â  For the
reasons stated, we affirm the trial courtÂs judgment.

Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Josh
R. Morriss, III

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  September
7, 2010

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  September
10, 2010

Â 

Do Not Publish











[1]The
medications had been prescribed to treat SmarrÂs pain caused by Âa herniated
disc in his neck and low back,Â as well as a crush injury to his foot.Â  





[2]Kempton
agreed MS-Contin would Âwear off slowly.ÂÂ 


Â 





[3]The
State argues that glucose tolerance test performed by Buller Âshowed SmarrÂs
glucose levels to be within the normal rangeÂ and, therefore, Âdoes not even
contradict the juryÂs verdict.ÂÂ  The
StateÂs argument suggests that BullerÂs diagnosis is incorrect and, therefore,
does not contradict the juryÂs verdict.Â 
We have no doubt that the diagnosis of hypoglycemia is more complicated
than merely comparing the test results to the ranges preprinted on the test
result form.Â  Buller admitted the glucose
levels were within the ranges which might be considered normal, but testified
the variances in the blood-sugar levels led him to conclude Smarr was
hypoglycemic.Â  We are not medical doctors,
and it is not our role to determine whether BullerÂs diagnosis was
correct.Â  The State did not present any
expert testimony that BullerÂs analysis of the glucose tolerance test was
incorrect.





[4]Buller
testified that Smarr reported fishing all day without eating, but while
drinking Monster drinks on Âa pretty warm day.ÂÂ 
Buller opined that, therefore, Smarr was probably Âa little dehydrated
as well.ÂÂ  

Â 





[5]Kempton
testified that a person who was suffering from hypoglycemic shock would recover
only if Âwe intervened some way,Â such as giving him Âglucose or even an IV of
glucose.ÂÂ  Kempton testified that the
chart did not indicate any fluids were administered to Smarr.Â  However, as noted above, Whalen testified
that a saline solution was administered intravenously.





[6]We
are not suggesting the amount of drugs in SmarrÂs body is not relevant to the
inquiry of whether SmarrÂs condition was caused by the prescription drugs.Â  Buller testified a quantitative test could
have been conducted.Â  A quantitative
analysis would have greatly strengthened the StateÂs case.Â  However, the State did not perform any tests
to determine the quantity of the prescribed medication in SmarrÂs blood.Â  While such a quantitative analysis would have
strengthened the StateÂs case, such an analysis is not required.Â